HENRY C. DART, Respondent, *v.* WILLIAM E. LAIMBEER, Appellant.

*Court of Appeals, November* 29, 1887.

1. *Contract. Breach. Proof of damages.*—Where parties have entered into an agreement to continue as partners for one year, and the firm is broken up and dissolved after four months by the act and fault of defendant, the courts ought not to be too precise and exacting in regard to the evidence upon which to base a claim for damages resulting from loss of future profits.

2. *Evidence. Secondary.*—There is no fatal error in the admission of a copy of a letter, though no sufficient ground was laid for the admission of secondary evidence of its contents, where it is perfectly plain that no harm could have resulted from its admission.

Action to recover damages alleged to have been sustained by reason of the breach of a copartnership agreement.

Appeal from a judgment of the general term of the superior court of New York city affirming a judgment entered upon a verdict.

*Edward S. Rapallo,* for appellant.

*George W. Wingate,* for respondent.

PECKHAM, J.—The defendant objects to the recovery in this action on two grounds : *First.* That there was not evidence sufficient to go to the jury to show that there would have been any profits from the business of the firm, from March to the end of the year in case the partnership had not been dissolved. *Second.* That there was error in the reception of the Perot letter.

In regard to the first we think there was evidence sufficient to go to the jury upon the question of future profits.

The plaintiff, while on the stand, swore that the business of the firm went on from November up to the time of the dissolution in March very prosperously increasing; that there were no signs of diminution ; that the trade was in town and out of town and that they had their salesmen out ; that the firm sold two classes of flour, called the barrel flour and the package flour, the former in the summer and the latter in the winter ; that for barrel flour the summer was the best season, and the package flour sold best in the winter. He proved by another witness, who was salesman and who went into the employ of the firm in February, 1880, that he sold the flour in Jersey City, where he had a good trade ; that he started with 160 stores, sold considerable and had a great deal more sold when in March the defendant told him to stop, and said that he would not send out any more goods and that no more orders would be filled. The witness also stated that he had a considerable trade in barrel flour, and as the city trade fell off the country trade increased—just doubled, and that his trade was increasing with a prospect that it would continue to increase during the year, and at that time the defendant stopped the business. The plaintiff, also, proved by another witness who was in the employ of the firm that the best part of the year for the business commences about September, and lasts until about January, and then there is a slack for a while and then picks up again about the first of February and continues to be better until the summer. He further test-

ified that there was no reason that he knew of why this business, if it had gone on, would not have been a good business from April to November, or why it would not have been a success from the time it stopped in March until the following November, and so far as he saw, the plaintiff conducted the business properly.

The plaintiff also produced and real in evidence what he claimed was a copy of a letter written by the defendant to a man named E. L. Perot, dated the 19th of April, 1880, in which letter he stated that the books of the firm showed a profit of four hundred and odd dollars per month; that he was settling up the accounts and hoped it would prove what the books showed.

The plaintiff also proved that on the first of January, after the concern had been in operation two months, a statement of the affairs of the firm was made by the bookkeeper, and such statement was present at the time that the partners had a conversation in regard to the state of the business. This statement was then looked at, and it was proved, and not contradicted, that it showed a profit for the two months of some $1,600, and that the defendant stated "that is doing very well, indeed; that is satisfactory." Some conversation was had between the partners at that time in regard to what disposition should be made of the profits. It was understood that this $1,600 of profit was based upon the condition of the firm as shown by the books, in which the accounts due the firm, and amounting to six or eight thousand dollars, were regarded as assets to the full amount, and if those accounts were not all collected the amount of the profits would be reduced accordingly.

This substantially was the character of the evidence given by the plaintiff for the purpose of furnishing a basis for the jury to come to a conclusion as to the amount of damages which he sustained by reason of a dissolution of the partnership before the time agreed upon.

A motion for a nonsuit, on the ground, among others,

that no sufficient evidence had been given upon which to base a claim to recover for prospective or future profits, was denied by the court.

The defendant, in order to meet this evidence, proved by an expert, who had made an examination of the books (there being no substantial dispute but what the books had been properly and accurately kept), that when the statement was made of the condition of the concern on the first of January, 1880, after it had been in existence for two months, and which statement showed an apparent profit of $1,600, that it appeared (as already stated) that such profit was based upon the assumption that the accounts which appeared as outstanding were all good and collectible. Another statement was made, as from the books, up to the 2d of March, 1880, in which it appeared that the profits for the two months from January to March, based upon the same assumption of the collectibility of the accounts, amounted to only $97. The expert further testified from an examination of the books that the entries therein as they stood on the day he examined them, and long after the dissolution of the company, disclosed a deficiency of $2,665, as a result of the business of the firm during the time of its existence. This was based upon all the entries in the books containing a statement of all the business of every name and nature, and all the receipts and disbursements. It would thus appear that after the dissolution of the firm, when the property of the firm was sold and the accounts were in course of collection, the result at the time when the balance was struck was as defendant stated above, viz.: a loss instead of a profit upon the business done.

The explanation as to how there could have been a profit of $1,600, on the first of January, and of ninety-seven dollars on the first of March, for the two months immediately preceding, and yet when the firm was dissolved and proceedings taken to wind it up, that a loss should be the result is made to appear by the evidence on the part of the

plaintiff. The proof on the part of the defendant simply showed that the accounts had not all been collected at the time when the expert witness examined the books. But there was no evidence that the accounts themselves were not against solvent debtors, who would have paid if the business had continued. The plaintiff showed that by suddenly dissolving the firm and breaking up the business in March, after its existence of but four months, losses occurred to the firm on that account. It would seem that the business of the firm was made of small accounts against a large number of customers, and that a sudden dissolution and going out of business had the effect upon their various customers of making them negligent in paying the firm debts, and the amounts. in each case were too small to make it worth while to attempt to collect them by legal proceedings. Hence one source of loss on winding up the concern.

It would seem, also, that there had been a loss upon the sale of the personal property of the firm, including the machinery, and quite large expenses had been incurred, in fitting up the store which had gone into the machinery account, and in closing the firm business at the end of four months, the profits realized had not been sufficient to counterbalance the loss upon the sale of the property of the firm and to make up the amount expended by way of repairs, etc., to the store. So that as a final result the firm sustained a loss instead of securing a profit from its four months' business. This does not necessarily affect the correctness of the assumption of profit made in the statements of January and March, 1880. The loss on the sale of the firm's property and the amount expended for repairs should hove been offset against a year's profits, instead of four months, and therefore, but one-third of those amounts ought in any event to be charged against these assumed profits. Then again there is not any evidence that the accounts could not have been readily collected in case the business had gone on. And lastly, upon the evidence on

the part of the plaintiff there was the fair prospect of the increase of business and a consequent increase of profits during the next eight months. All this evidence, we think, was quite sufficient to explain why upon the assumption of the accounts being good there should have been a profit in January and again in March appearing by the books, and yet upon an undue and premature winding up of the business of the firm there should subsequently appear to have been a loss instead of a profit upon the whole business.

This evidence in relation to the firm having realized any profits from their business during the four months, is only material as bearing upon the possibilities or probabilities of the same fortune attending it during the eight succeeding months.

It is not, as a measure of damages, that the evidence is given, but only as a fact from which inferences might be drawn by the jury as to what was reasonable and probable about the amount of profits to be realized from the business during the eight succeeding months had the firm continued business. If, as matter of fact, there had been a loss during those four months, if there were evidence satisfactorily explaining such a loss and also showing an inherent probability or almost certainty of a charge in the future, and that the succeeding months would have resulted in a business profit, the plaintiff would still have been entitled to a verdict.

Upon the whole we think there was evidence sufficient to go to the jury upon the question of probability of profits during the eight months unexpired at the time of the dissolution of the firm, and that the verdict of the jury should not be disturbed on that ground. The verdict shows that the parties entered into an agreement to continue as partners for one year, and that the firm was broken up and dissolved after four months by the act and fault of the defendant. Under such circumstances courts ought not to

be too precise and exacting in regard to the evidence upon which to base a claim for damages resulting from loss of future profits.

As was said in Bagley v. Smith (10 N. Y. 499), "it is the misconduct of the defendant which has rendered the inquiry necessary," and, it may be added, has also made it quite difficult. Within the rule as to prospective profits laid down in Wakeman v. Wheeler, etc., Co. (101 N. Y. 205) we think the plaintiff, by his proof brought, this case. Upon the second ground, viz., the admission of the Perot letter, we think there is no cause for a reversal of this judgment.

Whether there was error or not in the admission of a copy of the letter, as claimed by the defendant's counsel, for the reason that a sufficient ground was not laid for the admission of secondary evidence of its contents, we think it perfectly plain that no harm could have resulted from its admission. We do not decide that it was error to admit it, but assuming error we say no harm could have been caused by it. The letter simply stated that the books showed a profit of four hundred and odd dollars per month.

The books were subsequently put in evidence by the defendant, and evidence was given on his part proving that the books did show a profit of that average amount per month upon the assumption already stated of the collectibility of the accounts, and of course without considering the possible loss arising from a sale of the firm's property on a premature winding up of the concern. It is evident that the defendant in writing the letter understood exactly that the profit was based wholly upon this assumption of collectibility, which fact explains the expression used in the letter, " I am settling up the accounts and hope it will prove what the books show." Any one reading it would see that the profits appearing from the books were based upon the assumption that the accounts should prove collectible.

There is nothing else material in the letter. The expression used therein that "one thing is sure, the capital is always intact," is obviously but the expression of an opinion, and is followed up by the further statement that " a personal investigation of the whole matter would, I think, be more satisfactory to you."

Neither of the grounds argued by the defendant's counsel is sufficient upon which to reverse the judgment, and it should, therefore, be affirmed, with costs.

All concur except RAPALLO, J., absent.