Brown v. Hadley.

---

M. M. Brown v. D. H. Hadley.

| 43 | 267 |
|----|-----|
| 56 | 151 |
| d56 | 622 |

| 43 | 267 |
|----|-----|
| 65 | 103 |

| 43 | 267 |
|----|-----|
| 70 | 418 |
| 70 | 419 |

| 43 | 267 |
|----|-----|
| 71 | 636 |

| 43 | 267 |
|----|-----|
| 77 | 299 |

| 43 | 267 |
|----|-----|
| d82 | 408 |

Contract — *Breach* — *Measure of Damages.* In a contract for the purchase of real estate, with a contemporaneous contract that was an inducement to the purchaser, that the vendor was to furnish the purchaser with twenty cows and twenty sows for a period of three years, the purchaser to have all the benefit derived from the cows, but they were to be used exclusively for butter-making, and all the skim-milk was to be fed to the undivided increase of the sows, and as soon as the increase of the sows could be made to weigh seventy-five pounds apiece they were to be equally divided among the parties; and the vendor of the real estate failed to furnish the cows and sows; and an action is brought by the purchaser to recover damages for this breach of the contract, the measure of damages is such fair and reasonable profit arising from the use of the cows, for the purpose set forth in the contract, as the experience of dairymen in that locality shows can be estimated with reasonable certainty.

*Error from Shawnee District Court.*

THE facts are fully stated in the opinion. Judgment for plaintiff *Hadley* for $343.09 damages, at the September term, 1887. The defendant, *Brown,* brings the case to this court.

*H. C. Root,* for plaintiff in error.

*H. H. Harris,* and *J. T. Ward,* for defendant in error.

Opinion by SIMPSON, C.: The defendant in error commenced this action in the district court of Shawnee county, to recover damages for a breach of the following contract:

"This writing, made this 8th day of December, 1884, between M. M. Brown, of Kansas City, Mo., party of the first part, and D. H. Hadley, of Osseo, Mich., party of the second part, shall be evidence of a certain contract made and entered into this day between the parties hereto. The said party of the first part agrees to furnish said second party twenty good milch cows, for a period of three years from May 1, 1885, and twenty good brood sows for the same time; all of said stock it is mutually agreed shall be kept and and remain on said second party's farm, situated about ten miles, more or less, west of Topeka, Kas., and described as the S.E. $\frac{1}{4}$ of sec. 12, town 12, range 13, Shawnee county, Kansas. Said second party agrees to keep said cows for butter-making purposes only, and to milk each and all of them while they give milk or could be made to give milk, and to keep said sows for breeding purposes only, and to exercise reasonable diligence to make them produce as many pigs as possible, and to make them produce three litters of pigs per year if it can be done. Said second party further agrees to skim all the milk gotten from said cows, and to feed the same to the undivided pigs after the cream is taken off. The said first party agrees to let said second have all the butter and increase of said cows in consideration that the skimmed milk shall be fed to the undivided pigs, half of which shall belong to said first party as soon as they can be made to weigh seventy-five pounds each. It is further mutually agreed that said cows and sows shall remain the sole property of said first party; said second party agrees to feed and care for said stock as would be expected a good farmer would care for his own, and to keep them in a good, thrifty and thriving condition; and he further agrees that if he should fail to do this to forfeit all claims under this contract; and also said first party to take said stock away without process of law; said second party agrees to accept said stock at Topeka, Kas., and to deliver them there at the end of that time for which this contract is made; said first party agrees to sustain all losses arising from the natural death of said stock, and that reasonable diligence on the part of the second party would not have prevented.

M. M. BROWN.
D. H. HADLEY."

Under this contract only seven cows and seven sows were furnished by Brown, and these were taken away by Brown at the expiration of about eleven months. At the same time the plaintiff in error executed and delivered to the defendant in error a bond for a deed for the following-described land, situate in the county of Shawnee, to wit: The southeast quarter of section 12, township 12, range 13. This land was to be paid for as follows: Four hundred dollars, "the receipt of which is hereby acknowledged;" one note for six hundred dollars, due March 1, 1885; one note for four hundred dollars, due December 8, 1885; one note for six hundred dollars, due December 8, 1886; and one note for four hundred dollars, due December 8, 1887, all with interest at 8 per cent. It is the same land described in the contract sued upon. These two contracts were entered into at one and the same time, and were parts of one agreement. The case was tried to a jury, and they returned the following special findings:

"1. Did the plaintiff go on to, and make a personal examination of, the premises described in plaintiff's amended petition, before he entered into the contract of December 8, 1884? A. Yes.

"2. Was there anything to prevent the plaintiff from learning of the quality and character and value of the land in controversy, before he entered into the land and stock contracts of December 8, 1884, and before the plaintiff made the first payment to Brown on this land? A. No.

"3. When did the plaintiff make the second payment to Brown on this land, or how much or what sum did the plaintiff pay on the second payment? A. March 1, 1885, $611.

"4. If you find that the defendant made false and fraudulent representations to induce plaintiff to purchase this land, what were they? A. None.

"5. Was the plaintiff prepared to feed and take care of the cows and sows on the premises in a good, husband-like manner? A. Yes.

"6. If you find from the evidence that the plaintiff has sustained actual (not speculative) damages by reason of the defendant's breach of the stock contract, how much do you find for the plaintiff on account of the defendant's failure to furnish the plaintiff the twenty cows? A. $2,164.27.

"7. If you find from the evidence that the plaintiff has sustained actual damages (not speculative damages) by reason of defendant's breach of the stock contract, how much do you find for the plaintiff on account of defendant's failure to furnish plaintiff the twenty sows? A. None.

"8. How much is due on the three notes made by Hadley to Brown for purchase-money to this land? I mean, what is due for the principal and interest? A. Note due December 8, 1885; principal $400, interest $92.75; total $492.75. Note due December 8, 1886; principal $600, interest on same $139.31; total $739.31. Note due December 8, 1887, $400; interest to this date, $92.75; total on this note, $492.75.

"9. How much interest has Brown paid for Hadley on the Topeka Loan and Investment Company's mortgage? A. $82.24.

"10. What amount of taxes has Brown paid on the land for Hadley? A. $14.13.

"11. What was the consideration for which Hadley agreed to pay Brown the $3,400? Was it the land only, or was it the land and the use of the cows and sows for three years as mentioned in the contract? A. Land and stock — cows and sows.

"12. Did Hadley agree to pay Brown $3,400 for the 160 acres of land alone? A. No.

"13. What would have been the net profits to Hadley per year on twenty good milch cows from May 1, 1885, three years, under the contract, had Brown complied with his part of the contract? A. $800, or $2,400 for three years.

"14. Did Hadley keep and take care of the cattle and hogs he received, in a proper manner, as other farmers did, and according to his contract? A. Yes.

"15. Did Brown comply with his part of the contract in delivering the stock? A. No.

"16. Was the corral or yard prepared by plaintiff, May 1, 1885, in which to inclose the twenty cows defendant was to furnish plaintiff at that time, made of posts and barb wire? A. Yes.

"17. If you answer the above question 'Yes,' how many strings of barb wire did the plaintiff use in the construction of said corral? A. Three.

"18. Was the death of the cow and sow of defendant's while the same were in the plaintiff's care, caused by plaintiff's negligence and want of care in providing for said stock, and if 'Yes,' what were they worth? A. No.

"19. Do you find from the evidence that the plaintiff negligently and carelessly kept and cared for the stock delivered to plaintiff by defendant? A. No.

"20. If you find that by reason of plaintiff Hadley's want of care for Brown's stock in plaintiff's possession this stock was depreciated, what damage do you find that Brown sustained by reason of the depreciation of this stock? A. None."

I. The principal contention is over the measure of damages for the breach of such a contract. The theory of the plaintiff in error is, that the defendant in error is entitled to recover only actual damages caused by the breach; that in this case such damages would be seven per cent. on the estimated value of the cows that were agreed to be furnished. The defendant in error contends that having proved the number, kind, and quality of cows, the time for which they were to be furnished, the amount of butter such cows would produce, and the market price of butter, there can be no uncertainty as to damages. That where a business is of such a character that its annual profits can be calculated with reasonable certainty, such profits are not speculative nor remote. We think that the case of *Hoge v. Norton*, 22 Kas. 374, furnishes the measure of damages in cases of this character. It is said by BREWER, J.:

"The only other question we deem necessary to notice is that of damages. The property attached was a herd of cattle, and one of the items of damage as returned by the jury was the loss in the growth of the cattle, caused by the seizure and improper care while under seizure. It appears that the cattle were taken by the sheriff from the range where they had been kept for some time, and placed in charge of a herder on another range; and it is claimed that by reason of such change, and the inferiority of the new range, both in grass and water, the cattle failed to increase in weight as they otherwise would. The jury answered that they did not depreciate any in value, but that they did not grow as they would if they had not been removed; and this loss of expected growth is said by the one side to be a mere matter of anticipated profits, which cannot be made the subject of award, and by the other to be actual and legitimate damages. It is not always easy to draw the line between profits that are a legitimate element of compensation, and those that are too remote, contingent, or uncertain.

The old idea that profits were never recoverable, was long since exploded; and now, even in actions on contract, it is said that they may be recovered when proximate and certain. 'The general rule is, that the party injured by a breach of contract is entitled to recover all his damages, including gains prevented as well as losses sustained, provided they are certain, and such as might naturally be expected to follow the breach. It is only uncertain and contingent profits, therefore, which the law excludes.' (*Griffin v. Colver*, 16 N. Y. 489.) Now it appears from the testimony that cattle kept through the winter as these cattle were, do not ordinarily during such time increase any in weight, but are in good condition for summer feeding, and if kept where they are wonted, and free from worry, and where grass and water are abundant and good, will during the summer months gain in weight about a certain amount; that during the time when the increase in weight is expected, these cattle were driven away to a new range, exposed to worry, and where both water and grass were limited and inferior; and at the end of their detention they were returned to the owner, not, it is true, deteriorated in value or lessened in weight, but without having made the ordinary increase in weight and value. It is a case of gain prevented, rather than of loss sustained, and the questions are, whether such gain prevented is proximate and certain — *i. e.*, directly the result of the removal and inferior care — and the amount thereof susceptible of reasonably certain measurement. Both these questions the jury, by their verdict, answered in the affirmative, and we cannot say that the testimony did not fully warrant the answers. Of course absolute certainty is not attainable, as in casting up the figures of an account; but nevertheless there are certain laws of feeding and growth well understood among cattlemen, and whose results work out with sufficient certainty for business calculations and judicial investigations. The raising of cattle for market has been an extensive and ofttimes profitable business in this state; and it would be strange if one would wrongfully take from the owner a herd of cattle, remove them to a poorer range, feed them on inferior food, and so treat them that during the growing season they do not grow at all, and then at its end return them, saying, as did the unfaithful servant in the parable who returned the single talent without increase, 'Lo! there thou hast that is thine,' and still be under no liability to respond in damages to such owner. We do not think the law so deficient. It seems clear that the owner is damaged, that the

damages may be determined to a reasonable certainty, and that the wrongdoer is bound to make good the damages.

"In *Sewall's Falls Bridge v. Fisk*, 3 Foster (N. H.), 171, it appeared that the plaintiff's toll-bridge was carried away, through the fault of defendants, and the loss of tolls during the time reasonably necessary to rebuild was adjudged one element in the damages recoverable. In *Lacour v. The Mayor*, 3 Duer, 406, the plaintiff's manufactory was injured and compelled to stop running, through the fault of the defendant, and the profits which would have been realized during the period of necessary suspension were recovered. See also *James v. Adams*, 8 W. Va. 568; *Hanover Rld. Co. v. Coyle*, 55 Pa. St. 396; *Pa. Rld. Co. v. Butler*, 55 id. 335; *Pa. Rld. Co. v. Dale*, 76 id. 47; *Albert v. B. S. Rld. Co.*, 2 Daly, 389; *Moore v. Schultz*, 31 Md. 418; *Lawson v. Price*, 45 id. 123; *Sturgis v. Frost*, 56 Ga. 188; *Morey v. King*, 49 Vt. 304. As this item of damages was recoverable, it was a matter of proof, and we think the testimony offered to prove it legitimate and competent."

If damages of the character in question in that case can be recovered, this case presents an example of much more plain, definite, and easily ascertained damages. Butter-making to supply the local market has been extensively engaged in ever since the settlement of the state, and we have no doubt but that the experience of dairymen can furnish estimates of the profits of cows kept for that purpose, that can be relied upon with the same degree of certainty that attends the result of all other ordinary business transactions of life. There is no error in the instructions of the trial court in this respect.

II. There can be no reasonable contention about the two contracts being supplemental to each other. The promise to furnish the cows and sows was an inducement to buy the land, and no doubt enhanced the price agreed to be paid for the real estate. Nor do we see that any material error was committed by allowing the jury to determine that they were measurably dependent upon each other. It strengthened the claim for damages when it was shown that the promise to furnish the stock was one of the inducing reasons for the purchase of the real estate; but when that fact was fairly established by the

preponderance of the evidence, we can see no reasonable objection why it should not be considered by the jury as one of the elements of damage.

III. Complaint is made because a circular, issued by Brown, that set forth the location of the land, its advantages, the terms he proposed to sell it on, his proposition to furnish cows and sows to each purchaser of eighty acres, and some other things, was admitted in evidence and was permitted to go to the jury. A copy of this circular was attached to the petition of the plaintiff below as an exhibit. Hadley saw it in Michigan; it induced a correspondence between Brown and himself. This resulted in a visit by Hadley to Brown in Kansas City, Mo. When Hadley began to talk with Brown about the land, a copy of the circular was handed to him by Brown, who told him that it contained the terms and conditions upon which he would sell the land. It embodied in substance the contract of the parties. It was not only an advertisement that stated the location of the land, and the terms upon which it would be sold, but it was the terms of this particular negotiation and sale, and the two contracts that were made and executed by the parties substantially recited the same terms and conditions that were enumerated in the circular. Brown referred Hadley to the circular, and gave him one when he had journeyed all the way from Michigan to see the land described in it, and more than all this, said that his terms were all stated in the circular. Under these circumstances we are very confident that it was admissible in evidence as showing the intention with which Brown sold and Hadley bought the land, coupled with the use of the cows and sows, and establishes rather conclusively that the land and stock contracts are one and the same transaction.

IV. The special findings of the jury are not only consistent with the general verdict, but strongly support it; and there was no tenable ground upon which the motion of the defendant below for judgment on the special findings could be supported, and hence there was no error committed by overruling

it. All questions of fraud and misrepresentation in the quality of the land, and its adaptation to the purposes for which it was sold, are eliminated from the case by the special findings. No claim for damages was insisted on by reason of a failure to furnish the sows. The claim for recovery of damages is based solely on the failure to furnish the cows, and only questions arising thereon are material now. Some criticism may be fairly indulged in at several rulings of the trial court, but we do not consider them material or controlling enough to justify a reversal. This case has been tried three times by a jury, and two verdicts rendered in favor of the defendant in error. All the facts have been drawn out and fairly presented, and we think substantial justice has been done between the parties.

We recommend an affirmance of the judgment.

By the Court: It is so ordered.

All the Justices concurring.