(30 App. Div. 457.)

## CUTTING v. MINER.

(Supreme Court, Appellate Division, First Department. June 10, 1898.)

BREACH OF CONTRACT—DAMAGES—PROSPECTIVE PROFITS.

In an action brought by an actress against a theatrical manager to recover prospective profits as damages for defendant's breach of a contract by which he agreed to "play" the plaintiff for a week at his theater in Newark, and to pay her a specified proportion of the gross receipts, amounting, with certain qualifications, to one-half thereof, it appeared that the play was not produced at all. There was evidence that on the first night there was "$450 in the house" when the audience was dismissed, and there were people in the "foyer" who might have bought tickets if the performance had proceeded. The play had not been produced before. The troupe was not one of special importance, and there was no evidence even as to its drawing power in other plays. The jury awarded the plaintiff $3,445. *Held*, that this finding was mere guesswork, and that the evidence was entirely insufficient to sustain the verdict.

Appeal from trial term.

Action by Minnie Seligman Cutting against Henry C. Miner. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

The action was for damages for the breach of a contract whereby the defendant "agreed," to quote the complaint, "to play the plaintiff an engagement one week and Saturday matinee" at the Newark Theater, to pay her $800 of the gross receipts derived from her first performance, to retain for himself $1,500 of the next gross receipts, and to share the remainder of the gross receipts equally with the plaintiff. The defense was that the contract was obtained from the defendant's agent by fraudulent representations made to such agent as to what had previously been agreed upon verbally between the parties; also that, notwithstanding the alleged fraud, the defendant's agent, on his own behalf, was ready and willing to fulfill the contract, but that the plaintiff arbitrarily refused to perform with her company at the theater in question.

Argued before BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

A. H. Hummel, for appellant.
Sumner B. Stiles, for respondent.

BARRETT, J. Upon the main issues in this case the jury found against the defendant's contention. We see no reason for disturbing their verdict upon these issues. The evidence was certainly conflicting, and it was fairly and correctly submitted to the jury in

a careful charge by the learned trial justice. The serious question is as to the damages awarded. The learned trial justice submitted the case to the jury in two aspects: First, as to the prospective profits of the performances under the contract; and second, as to the expenses incurred by the plaintiff in preparing therefor. He very properly told the jury, in substance, that, if they found profits, they should not find expenses; but if they were unable, upon the evidence, to find profits, then they might award the expenses. The jury found profits, and consequently failed to ascertain or award the expenses. Their verdict is precise on that head. We quote from the record: "The jury then returned with a verdict in favor of the plaintiff for the sum of $3,445, that being the plaintiff's share of the proceeds which would have been received for the week over any sums which she saved because not called upon to perform, with interest from May 12, 1894." The jury thus necessarily found that the receipts from the theater for the seven performances would have been $7,590. Such receipts would have given the plaintiff her $800, the defendant his $1,500, and would have left $5,290 for equal division. One-half of the latter sum, namely, $2,645, added to the original $800, makes $3,445, the amount awarded to the plaintiff. There was no evidence in the case to warrant this finding. It was necessarily pure guesswork. There was, it is true, $450 in the house when the audience was dismissed, and there were people in what is called the foyer of the theater, who, had the performance proceeded, might also have purchased tickets. This was the only substantial testimony on the subject, and it is obviously insufficient to sustain the verdict. Whether the play would have succeeded or not was entirely problematical. It had not previously been produced. It might have been a success or it might have been a complete failure. We do not know how many persons were in the foyer, and we cannot speculate on that head. But, even if the receipts of that first night had amounted to $500, or even $550, and there had been similar receipts for the rest of the week, the total proceeds would not have amounted to more than about one-half of what the jury thus, in effect, found. If the performance had been permitted to proceed, and the play had been a success, as evidenced by equally large audiences on subsequent occasions, there would have been some reasonable basis for a finding as to the prospective profits for the rest of the week. But here there was no basis at all. There was simply a first-night audience, attracted by the production of a new play. There was not even evidence as to the drawing power of the plaintiff's company apart from this particular play. There was, in fact, absolutely no criterion for the second and succeeding nights; certainly not for increased receipts upon these subsequent occasions. The other evidence was entirely speculative. The defendant, it is said, admitted that the weekly receipts of his theater were never less than $2,300. His manager admitted that they sometimes took in as much as $1,500 in a night, and he also said that Monday nights were "usually light." Then, too, the defendant told one of the witnesses that the plaintiff would have done a good week's business, and that he liked the play, and had faith in it. There were various other "straws" of the same kind. But in all this we find

nothing from which the jury could have drawn an inference as to what receipts would probably have been taken in during the week in question. We quite agree with the suggestion that, where the defendant's misconduct has rendered the proof of damages difficult, the court "ought not to be too precise and exacting in regard to the evidence upon which to base a claim for damages resulting from loss of future profits." Dart v. Lambier, 107 N. Y. 664, 14 N. E. 291. The difficulty here is that there are no substantive facts from which the necessary inferences can be drawn. The case is, consequently, not within the rule laid down in Wakeman v. Manufacturing Co., 101 N. Y. 205, 4 N. E. 264, and Crittenden v. Johnston, 7 App. Div. 258, 40 N. Y. Supp. 87. In these cases there were sufficient facts from which prospective profits could fairly and reasonably have been inferred. There is upon the facts no substantial distinction between the present case and Bernstein v. Meech, 130 N. Y. 354, 29 N. E. 255; and Moss v. Tompkins, 69 Hun, 290, 23 N. Y. Supp. 623, affirmed 144 N. Y. 659, 39 N. E. 858; and whatever slight distinction there is is unfavorable to the plaintiff. The play in Moss v. Tompkins, though untried in the city of New York, had at least been produced in other cities. The present case rests entirely upon the fact that a fair audience was attracted to the first performance of an untried play by a troupe of no special importance. In our judgment, no inference can, under the circumstances, be drawn from that fact as to the probable receipts upon subsequent occasions. "The results" were, as said in Bernstein v. Meech, supra, "speculative, and by no probative means ascertainable." Under this latter case the plaintiff might have recovered the expenses legitimately and naturally incurred by her for the purposes of the performance of the contract upon her part. But the jury did not pass upon the amount of these expenses, and there is no finding upon that head. We cannot, therefore, give the plaintiff the option of stipulating to reduce the judgment to the amount of these expenses. There is evidence in the case on that head, but the defendant is entitled to have that evidence submitted to and passed upon by a jury.

We are constrained, therefore, to reverse the judgment and order denying the defendant's motion for a new trial, and to order a new trial, with costs to the appellant to abide the event. All concur.