## FT. SMITH & W. R. CO. v. WILLIAMS.

### No. 1242.   Opinion Filed January 16, 1912.

### (121 Pac. 275.)

**CARRIERS—Shipment of Freight—Delay—Prospective Damages.** ˙ Where a carrier contracts with a shipper to deliver certain machinery, a merry-go-round, to a certain place by a certain day for a specific purpose, and has full notice of the nature of the purpose, is fully warned of the use to which the machinery is to be put, and of the importance of having it there on the particular day specified, and of the damage or loss of earnings which would .result from failure to deliver same on the day agreed upon, and undertakes such shipment with full knowledge that such conditions and the expected earnings are the moving motive on the part of the shipper, and thereupon through want of diligence fails to deliver such machinery until after the day agreed upon, and after the time has expired when such machinery can be operated with any profit, such carrier is liable in such amount as will reasonably compensate the shipper for the damage done. And, if the amount of earnings or profits can be estimated with a reasonable degree of accuracy, they then become the most just and adequate measure of damages.

(Syllabus by Harrison, C.)

*Error from Marshall County Court; J. W. Falkner, Judge.*

Action by J. P. Williams against the St. Louis & San Francisco Railroad Company, a corporation, and the Ft. Smith & Western Railroad Company, a corporation. Judgment for plaintiff, and defendant Ft. Smith & Western Railroad Company brings error. Affirmed.

This action was filed in the county court of Marshall county December 7, 1908, by J. P. Williams against the St. Louis & San Francisco Railroad Company and the Ft. Smith & Western Railroad Company for damages for failure of the two carrier companies to deliver a certain merry-go-round from the town of Indianola, Okla., to Madill, Okla., within time to be used by plaintiff at a picnic held in Madill, Okla., on August 14 and 15, 1908. On August 10, 1908, plaintiff, J. P. Williams, tendered for shipment to the Ft. Smith & Western Railroad Company at Indianola, Okla., the merry-go-round in question, the same being accepted

by said railroad company under an agreement between plaintiff and said company that said property would be delivered to plaintiff at Madill, Okla., not later than the morning of the 14th of August, and was loaded for shipment August 10th. The Ft. Smith & Western Railroad Company delivered same to the St. Louis & San Francisco Railroad Company at Weleetka, Okla., and the St. Louis & San Francisco Company carried it from Weleetka to Madill; the same reaching Madill about 5 o'clock in the evening of August 14th. The evidence shows that the defendant Ft. Smith & Western Railroad Company was informed of the nature of the shipment and of the necessity for having the merry-go-round at Madill in time for use on the morning of the 14th of August, and that it was fully explained to the defendant company by plaintiff that plaintiff was going to use said merry-go-round at Madill during the two days' picnic, and particularly and definitely informed plaintiff that he wanted it to reach Madill in time to be put up and ready for use on the morning of the 14th of August; that being the first day of the two days' picnic. The waybill issued by the defendant company to plaintiff, a copy of which is made a part of the record, bears this notice: "Please hurry through. MUST be at Madill by the 8-14." From the evidence in the record the distance from Indianola over the Ft. Smith & Western Railroad to Weleetka is 28 miles, and the distance from Weleetka over the St. Louis & San Francisco Railroad to Madill is 109 miles. It also appears from the evidence that the merry-go-round was received by the St. Louis & San Francisco Railroad Company at Weleetka some time during the evening of August 13th, and was handled or forwarded by such company on the first train out to Madill, reaching Madill over the Frisco about 5 o'clock on the evening of the 14th, having been three days in transit from Indianola to Weleetka, a distance of 28 miles, and having been carried by the Frisco road, a distance of 109 miles, in something like 24 hours' time. The plaintiff below sued for $425, alleging that he had been damaged in the sum of $400 in loss of profits and the sum of $25 in amount paid as license to run his machine at Madill, and that all of such

losses were the direct result of the negligence and unnecessary delay in shipment by the defendant carriers.

Each of the defendant carriers appeared and filed its separate answer to plaintiff's petition; the same being in effect, general denials of the allegations contained in the petition. Upon a trial of the cause, which was had to a jury, the plaintiff obtained a verdict against the Ft. Smith & Western Railroad Company for $200, the court having peremptorily instructed the jury to return a verdict releasing the San Francisco Railroad Company from any liability, upon which verdict the court rendered judgment in favor of plaintiff and against defendant Ft. Smith & Western Railroad Company in the sum of $200, from which judgment and order of court overruling the motion for new trial the Ft. Smith & Western Railroad Company appeals to this court.

*C. E. Warner* and *H. P. Harper,* for plaintiff in error.

*F. E. Kennamer* and *Chas. A. Coakley,* for defendant in error.

Opinion by HARRISON, C. (after stating the facts as above). Plaintiff in error complains of nineteen separate assignments of error, but in its brief discusses and reviews them all under three general heads, viz.: First. It was error for the court to admit evidence tending to show, and to instruct the jury, that plaintiff was entitled to recover the profits which he alleges he would have received. Second. The court erred in refusing to give instruction No. 1, asked by the defendant, which reads as follows: "You are instructed that upon the evidence in this case it is your duty to return a verdict for the defendant, Ft. Smith & Western Railroad Company." Third. The measure of damage in any event could not be the gross receipts; but plaintiff's recovery should have been limited to the net receipts. These three propositions are all included in the one general proposition "whether a loss of contemplated profits is a proper element of damage."

This has ever been looked upon and treated by the courts as a vexed and difficult question. It has been, and will always be,

impossible to lay down any fixed and definite rule correctly ap-
plicable in all cases.   There has never been a rule established
which was decisive and universally followed by the courts in all
cases, but the inclination of the earlier authorities to hold that
contemplated profits *per se* were improper elements of damage
has given way under the riper wisdom of jurisprudence, and, in-
stead of holding to the earlier inclination, the weight of authori-
ties in modern jurisprudence either holds or concedes that, where
a loss of profits is not too remote or conjectural to be susceptible
of computation with reasonable accuracy, they are proper elements
of damage.

This rule is recognized with approval by each and all of the
following authorities cited by counsel for plaintiff in error in sup-
port of his first proposition:   *Strawn v. Cogswell,* 28 Ill. 461;
*Perry Frazer et al. v. S. F. Smith et al.,* 60 Ill. 145; *Galveston, H.
& S. A. R. Co. v. Jessee,* 2 Willson, Civ. Cas. Ct. App. sec. 405,
and authorities cited; *People's Savings Bank of Waterloo v. C.
F. Transit Co. et al.,* 118 Iowa, 740, 92 N. W. 691; *Bartow v.
Erie R. Co.,* 73 N. J. Law, 12, 62 Atl. 489; *H. & T. C. R. R. Co.
v. George A. Hill,* 63 Tex. 381, 51 Am. Rep. 462; *Western
Union Telegraph Co. v. Jewse Crall,* 39 Kan. 580, 18 Pac. 719;
*Moulthrop et al. v. Hyett et al.,* 105 Ala. 493, 17 South. 33, 53
Am. St. Rep. 139; *Williams v. Island City Mercantile & Milling
Co.,* 25 Ore. 573, 37 Pac. 51; *Brigham & Co. v. Carlisle,* 78 Ala.
244, 56 Am. Rep. 28; *Gas Co. v. Glass Co.,* 56 Kan. 622, 44 Pac.
621; *Cutting v. Miner,* 30 App. Div. 457, 52 N. Y. Supp. 288;
*Griffin v. Colver,* 16 N. Y. 489, 69 Am. Dec. 718; *Western Gravel
Road Co. v. Cox et al.,* 39 Ind. 263; *Florida Northern Railway Co.
et al. v. Southern Supply Co.,* 112 Ga. 1, 37 S. E. 130; *Bell v. Rey-
nolds,* 78 Ala. 511, 56 Am. Rep. 55; *Pollock & Co. v. Gantt,*
69 Ala. 373, 44 Am. Rep. 519; *Witherbee v. Meyer,* 155 N. Y.
446, 50 N. E. 58.

In each of the above cases the rule had been either rejected
or followed in the lower courts, and the appellate courts in revers-
ing the judgment where the rule had been followed, or in affirm-
ing the judgments where the rule had been denied, did so pure

ly upon the ground that the profits contended for in such cases were entirely too remote, speculative, and conjectural to be estimated with any degree of accuracy, and not upon the ground that, though the profits might be estimated with a reasonable degree of certainty, they were *per se* improper elements of damage.

In the case of *Gas Co. v. Glass Co.,* 56 Kan. 622, 44 Pac. 621, cited by plaintiff in error, Mr. Justice Johnson in rendering the opinion says:

"It is urged that damages cannot be measured by the anticipated profits, as the calculation is necessarily based on conjecture rather than upon facts. It is the aim of the law to give the party injured by the breach of the contract all the damages which he may have suffered by such breach; and, where the contract is made with a view to future profits and such profits are within the contemplation of the parties, they may, where they can be established with certainty, form a just measure of damages. It has been said that as a general rule, with a few exceptions, anticipated profits prevented are not recoverable in the way of damages for the breach of contract; but it is well settled in this state that damages based upon prospective profits which would have been realized had the contract been performed may be allowed, providing they are fairly within the contemplation of the parties, are the direct and natural consequence of the breach of the contract, and are susceptible of being ascertained with reasonable certainty" —citing *Hoge v. Norton,* 22 Kan. 374; *Brown v. Hadley,* 43 Kan. 267, 23 Pac. 492; *Town Co. v. Lincoln,* 56 Kan. 145, 42 Pac. 706.

In the case of *Williams v. Island City Mercantile Company,* 25 Ore. 573, 37 Pac. 49, cited by plaintiff in error, Mr. Justice Bean in rendering the opinion says:

"The object of damages is, primarily, compensation to an injured party for a loss sustained; and the rule is, primarily, that only such damages can be recovered as are the natural and proximate result of the breach, and that the damages which are purely speculative or conjectural are not recoverable. But the application of this rule varies as much as the facts of the adjudged cases in which it has been applied. There is nothing in the term 'profits' which of itself excludes their being given in evidence, and used as the measure of damages; but, when excluded, it is because they are either unnatural or remote, or there is no criterion by which to estimate them with that certainty which the law requires. In-

deed, in many cases, profits are the only certain or reliable meas-
ure of damages.    *    *    * "

In the case of *Moulthrop v. Hyett,* cited by plaintiff in error
above, Mr. Justice McClellan, in rendering the opinion of the
Supreme Court of Alabama, says:

"It seems reasonable that, where profits are thus lost, the
defaulting party should make them good, for the machine is pur-
chased with a view to the profits, and the contract would not be
entered into if the profits were not expected and counted upon.
But the difficulty in measuring damages by profits is that they are
commonly uncertain and speculative, and depend upon so many
contingencies that their loss cannot be traced with reasonable cer-
tainty to the breach of the contract.   When that is the case, they
are said to be too remote, and the damages must be estimated on
the consideration of such elements of injury as are most directly
and certainly the result of the failure of performance. But in
some cases profits are the best possible measure of damages, for
the very reason that the loss is indisputable and the amount can
be estimated with almost absolute certainty."

None of the above authorities have held against the justness
of the rule of applying profits as a measure of damages, but have
merely held it inapplicable to the cases decided.   There is more or
less inaccuracy in every action for damages for breach of con-
tract, but in order to justify recovery in any case, assuming that
a breach has been committed, there are two necessary elements
to be considered:   One that a damage has been done; the other
that such damage is the result of the breach.   The amount of
the one should be computed with reasonable accuracy.   The fact
of the other must be determined with reasonable certainty.   A less
degree of accuracy is required in the former than of certainty in
the latter, but neither is required to be absolute or beyond con-
jectural possibilities.   Where it reasonably appears that a party
has been damaged, and that such damage is the direct result of the
breach, then a recovery is justified.   The next step is to ascertain
how much will reasonably compensate the injured party.   This
should be computed by the plainest, easiest, and most accurate
measure which will do justice in the premises, and if from the con-
ditions in the contract, and the nature of the breach, it reasonably
appears that the extent or amount of damages may be more read-

ily, easily, correctly, and justly ascertained by applying the loss of profits as a measure, if it is evident that profits were lost and the amount thereof can be calculated with reasonable accuracy, then such profits are the true measure to be applied. In such cases, however, it should appear evident that profits were lost. The amount may be estimated with only reasonable accuracy; but the fact that profits were lost should require stricter proof. This doctrine is deduced from a vast weight of authorities, both American and English, including 2 Joyce on Damages, and authorities; 1 Sutherland on Damages (3d Ed.) and notes and cases cited; 1 Sedgwick on Damages (8th Ed.) ; 8 Am. & Eng. Enc. (2d Ed.) and authorities cited in notes; 13 Cyc. and cases cited; *Bryson v. McCone,* 121 Cal. 153, 53 Pac. 637; *Blagen v. Thompson,* 23 Ore. 239, 31 Pac. 647, 18 L. R. A. 315; *Dart v. Laimbeer,* 107 N. Y. 664, 14 N. E. 291; *Brown v. Hadley,* 43 Kan. 267, 23 Pac. 492; *Hoge v. Norton,* 22 Kan. 374; *Hadley v. Baxendale,* 9 Exch. 341; 26 Eng. L. & Eq. 398 (a leading case both in England and America) ; *Tootle v. Kent,* 12 Okla. 674, 73 Pac. 310; *Choctaw Ry. Co. v. Jacobs,* 15 Okla. 493, 82 Pac. 502; *Mace v. Ramsey,* 74 N. C. 11; *Butler v. Manhattan R. R. Co.,* 143 N. Y. 417, 38 N. E. 454, 26 L. R. A. 46, 42 Am. St. Rep. 738; *Bluegrass Cordage Co. v. Luthy,* 98 Ky. 583, 33 S. W. 835; *Simpson v. London, etc., R. Co.,* I. Q. B. Div. 274.

Hence we conclude that where a carrier contracts to deliver certain machinery to a certain place by a certain day for specific purposes, and has full notice of the nature of the purpose, is fully warned of the use to which the machinery is to be put, and of the importance of having it there on the particular day specified, and of the damage or loss of earnings which would result from failure to deliver same on the day agreed upon, and undertakes such shipment with full knowledge that such conditions and the expected earnings are the moving motive on the part of the shipper, and thereupon through want of diligence fails to deliver such machinery until after the day agreed upon, and after the time has expired when such machinery can be operated with any profit, such carrier is liable in such amount as will reasonably compensate the shipper for the damage done. And, if the amount of

earnings or profits can be estimated with a reasonable degree of accuracy, they then become the most just and adequate measure of damages.

This we think correctly presents the real conditions of the case at bar. The plaintiff herein owned the merry-go-round. It was at Indianola on the day the contract was entered into. There was going to be a two days' picnic at Madill, Okla. Plaintiff had purchased a right from the picnic committee to operate his machine there during the two days. He informed the carrier of all these circumstances, and asked the carrier if delivery of the machinery could be made by at least one day before the picnic began, or in time to have the merry-go-round ready for operation on the morning of the first day of the picnic. The agent of defendant company fully understood from the evidence in the record, undenied, all the conditions involved in the case, fully understood the importance of having the machinery at Madill on the first day of the picnic, and understood that it would be worthless for operation if it failed to reach Madill until after the picnic was over, and with this understanding promised plaintiff that he would deliver the machinery on time. And thereupon, with this understanding between the parties, plaintiff delivered the machinery to the defendant company for shipment to Madill. These facts are undisputed in the record. It also appears from the record that the machinery in question was turned over to defendant for delivery on the 10th of August, and that defendant company was nearly four days shipping such machinery a distance of only twenty-eight miles from Indianola to Weleetka, no excuse whatever being given for the delay; that on the evening of the 13th it was delivered by defendant company to the Frisco Company and by the Frisco Company, within the next twenty-four hours, delivered a distance of 109 miles to consignees at Madill, reaching Madill near the close of the first day of the picnic. The evidence shows, also, that plaintiff upon receipt of the machinery immediately set to work with a number of hands and worked all night in order to get the machinery ready for operation, but failed to do so until between 9 and 10 o'clock of the last or second day of the picnic.

The record further discloses that the number of people present on the first day was, if any difference, greater than on the second day. It shows, also, that the plaintiff, after getting his machinery ready for operation, at about 10 o'clock the second day, from about 10 o'clock on the morning of the second day to the close of the evening of the same day, took in $245. The plaintiff claimed that he lost $400 by reason of not having his machinery ready as agreed upon. He testified that he would have taken in $400 more had he had his machinery ready for operation during the whole of the two days. This testimony, of course, was a mere supposition, and not to be treated as a basis upon which to compute the amount of damages. But from the fact that he took in $245 during a little more than two-thirds of the second day, and the witness Jorden, who operated the machine, and who had been operating merry-go-rounds for seven years, testifying that the net profits of the time lost on the second day would have been at least $40, reckoning from what had been taken in during the remaining portion of the day, and the fact that the crowd was larger, if any difference, on the first day than on the second, it appears to be reasonable that under ordinary circumstances he would have taken in $200, the amount of the judgment, during the one and one-third days lost to him. The record shows there were 2,500 to 3,000 people present each day; that there was no other merry-go-round on the grounds; that the receipts were from $1 to $5 each run of the machine; that a run lasted three to four minutes. This, it seems to us, would offer a reasonable basis upon which to estimate an approximate loss. It is not unreasonable to suppose that the receipts would have been approximately the same on the first as on the last day. Had he been able to run all of the second day at the same rates which he did run, his receipts would have been from $325 to $360. Hence we do not feel that it would be unreasonable for the jury to say from all the facts before them that plaintiff was damaged at least $200 for the one and one-third days lost. It would appear more unreasonable and conjectural and more out of harmony with business experience and common judgment to say that he would not. And in view of all the circumstances we think the verdict is not the

result of mere guesswork or conjecture, but that it is fair, reasonable, and should be allowed to stand.

The judgment is therefore affirmed.

By the Court: It is so ordered.

All the Justices concur.