## MACKEY v. BOSWELL et al.

No. 6262—Opinion Filed Dec. 26, 1916.

Concurring Opinion, Jan. 2, 1917.

(162 Pac. 193.)

(Syllabus by the Court.)

1. **Pleading—Judgment Upon Pleadings—Propriety.**

Where the answer states a defense to plaintiff's cause of action, it is error to render judgment for plaintiff upon the pleadings and opening statement of defendant's counsel to the jury.

2. **Damages — Measure — Contracts—Construction.**

Loss of profits in being unable to plant, cultivate, and harvest a crop, if within the contemplation of the parties at the time a contract is made, and if such a loss or damage as flowed directly or proximately from the breach of such contract, and if capable of accurate measurement or estimate, is recoverable in an action for damages for the breach of such contract.

Sharp and Thacker, JJ., dissenting in part.

Error from District Court, Grady County; Frank M. Bailey, Judge.

Action by D. B. Boswell and another against C. A. Mackey. There was a judgment for plaintiffs, and defendant brings error. Reversed and remanded.

Riddle & Hammerly, for plaintiff in error.

Wm. Stacey, for defendants in error.

HARDY, J. Plaintiff in error was defendant, and defendants in error were plaintiffs, in the trial court, and for convenience parties will be referred to as they there appeared.

This was an action to recover upon an account for goods, wares, and merchandise. Defendant filed an amended answer which alleged that about the ———— day of April, 1911, he made a contract with plaintiffs to furnish him with groceries and other necessary provisions to run him during the full crop season, spring, summer, and fall, and until the crops were gathered, including sufficient supplies for a man working for defendant upon shares, and that plaintiffs took a note for $479.84, to secure the payment of which defendant executed a mortgage upon his crop for 1911; that defendant owned eight head of work stock in addition to the stock furnished his share cropper and had 300 acres of land in cultivation, 200 acres of which had been sowed in oats; that the oat crop failed, and it was defendant's intention to plant said land in kaffir corn and milo maize, of which fact plaintiffs were advised, and that had defendant planted said crops said lands would have netted him $5 per acre; that defendant had employed two hands to help him through the crop season, but that during the month of May plaintiffs breached their said contract and refused to furnish him with provisions, and that by reason thereof defendant was unable to procure such provisions anywhere else except for cash; that he did not have sufficient money with which to pay his said hands and buy provisions necessary to carry on his work, and was compelled to discharge his

said hands and to pay cash for provisions he was required to have and was unable to plant his fall crops as he had intended to do; that plaintiffs knew of these facts at the time and knew defendant's circumstances, and knew that he would be unable to buy provisions elsewhere except for cash, and knew that he was unable to pay cash for his provisions and keep said hands; that, by reason of plaintiffs' breach of said contract, he was compelled to discharge his said hands, was left with two teams in his possession, which were required to remain idle for 90 days; that the usable value of said teams had he been able to retain said hands in his employment and use said teams in his crop, was $2.50 per day each; and in addition to said loss was compelled to incur an extra expense per team per day for 90 days, of 50 cents—for all of which he prayed judgment. Reply was filed, and when the case came on for trial, after the jury had been regularly impaneled and after respective counsel had made their statements to the jury, plaintiffs moved the court for judgment on the pleadings and opening statement of counsel for defendant, for the reason that said answer and opening statement constituted no defense to plaintiffs' cause of action. This motion was sustained, to which action exceptions were saved, and judgment thereupon rendered in favor of plaintiffs for the amount prayed.

It was error for the court to sustain the motion for judgment on the pleadings and opening statement of counsel if the allegations of defendant's answer constituted a defense. Mascho et al. v. Johnson, 49 Okla. 646, 153 Pac. 630.

The sole question briefed by counsel for both sides is whether the allegations of defendant's answer presented any defense to the plaintiffs' action. Plaintiffs contended that said answer was insufficient: (1) Because the damages claimed were in no way connected with the contract or subject-matter of the suit and were not in contemplation of the parties when they entered into the contract; and (2) that the damages claimed are purely speculative and too remote and uncertain to create any liability because of the alleged breach of contract.

In Ft. Smith & Western R. Co. v. Williams, 30 Okla. 726, 121 Pac. 275, 40 L. R. A. (N. S.) 494, the following is quoted from a Kansas case with approval:

"It is well settled in this state that damages based upon prospective profits which would have been realized had the contract been performed may be allowed, providing they are fairly within the contemplation of the parties, or the direct natural consequence of the breach of the contract, and are susceptible of being ascertained with reasonable certainty."

This language was quoted with approval in case of First State Bank of Mannsville v. Howell et al., 41 Okla. 216, 137 Pac. 657, which was an action to recover certain property covered by chattel mortgage, given by one Howell to J. B. Wall, a merchant, and by him assigned to plaintiff. One of the errors assigned was the action of the court in refusing to sustain a demurrer to the seventh paragraph of defendant's answer, which charged in substance that, at the time Howell executed the notes and mortgage in controversy, Wall had agreed to furnish Howell out of his store such supplies as would enable Howell to make a crop during the year 1909; that Wall failed and refused to do so, on account of which failure Howell was compelled to work out for $1 per day when he should have been in his crop; that the services of himself and teams in his crops during such time were worth $3 per day; that, on account of the fact that his teams and other personal property were mortgaged to Wall, he was prevented from obtaining credit elsewhere, all of which was known to Wall at the time the notes and mortgages were executed; and that, as a direct and proximate result of such failure and refusal on Wall's part to comply with the terms of his said agreement and furnish Howell the supplies necessary to enable him to plant and care for his crop, he was compelled to and did neglect planting it for two months, and the same was damaged and his profits thereby reduced in the sum of $250, and thus there was squarely presented the question whether damage to a crop such as was charged and proven in that case could be recovered in an action for the breach of the contract between Howell and Wall. After citing Ft. Smith & Western R. Co. v. Williams, supra, and noting the fact that the general rule in these cases is that the true measure of damages where the seller fails to deliver goods sold, where the purchase price had not been paid, is the difference between the agreed price and the market price at the time and place of delivery with interest, it was said:

"But, when this cannot be done, the rule does not apply. Such is the condition in the case at bar"—and such is alleged to be the situation here.

And after citing section 2852, Rev. Laws 1910, and calling attention to the fact that the contract alleged in the answer was not denied by reply or otherwise, and that the jury, as it had a right to do, had found, according to the contention of the defendant, that such a contract was made as alleged, said:

"Therefore we are bound to say that the parties, at the time they made the contract, had in mind the profits that would arise from

the making of a crop. That was, and of necessity must have been, in contemplation of the parties at the time the mortgage was executed, for the mortgage covered all the crops to be grown by Howell as well as the mules in question. This being true, we have no hesitancy in saying that the rule fixing the measure of damages heretofore announced is not only supported by reason and authority, but by the statute above quoted"—and in support of this statement cites the following cases: "Jones v. George, 61 Tex. 345, 48 Am. Rep. 280; Rice v. Whitmore, 74 Cal. 619, 16 Pac. 503, 5 Am. St. Rep. 479; Joyce on Damages, sec. 1374."

The court then determined the purpose for which said evidence was competent in that case, and continued:

"Of the correctness of the foregoing position. we do not think there can be any question. It is undisputed that there was such a contract made as alleged in Howell's answer; that its terms were broken by Wall; that Howell was damaged as alleged in his answer. The testimony was amply sufficient to sustain the verdict, which warrants us in finding that Howell's story is true, wherein he says that he could not get supplies from Wall: that, in order to support his family, he had to work away from home by the day, when his services, with the team, were required in his * * * crop, and were worth at least $3 per day; that thereby his crop was planted late, and was caught by the drought; that he had 25 acres of corn that made only 5 bushels per acre, while his neighbors, with the same labor, on the same quality of land, made 25 bushels per acre, which was worth 50 cents per bushel. On this basis he showed a damage of $250 of testimony wholly undisputed. Thus his damage was ascertainable by the plainest, easiest, and most accurate measure possible, by showing the loss of property, occasioned by the damage done the crop. Making a crop was one of the principal thoughts the parties had in mind when the contract was made. It was for that purpose he made the contract. Had he wanted to work out by the day, there would have been no necessity for the contract and mortgage; but, if he made a crop, he must needs make provision for the sustenance of his family and team while doing so, and, when he made the contract with Wall (the principal contract between them evidenced partially by the notes and mortgage), it was in the contemplation of their minds that no crop could be made unless the supplies were furnished, and that to fail to furnish the supplies at the time they were needed could result only in damage to Howell, and therefore the allegation and proof to support the same were properly presented to the jury in order to make defendants' legitimate defense."

See At. & B. Air Line R. Co. v. Brown, 158 Ala. 607, 48 South. 73; Skagit R. & L. Co. v. Cole, 2 Wash. 57, 25 Pac. 1077.

The opinion seems to be decisive of this case. It is specifically alleged that plaintiffs and defendant entered into a contract by which plaintiffs agreed to furnish defendant with groceries and other provisions necessary to run him during the full crop season, spring, summer, and fall, and until crops were gathered, and, inasmuch as the motion of the plaintiffs for judgment must be treated as admitting this allegation to be true, we must assume that there was a contract to furnish supplies to defendant during the entire crop season and until all the crops were gathered; and assuming such a contract was to have been made, it was clearly one of the principal objects of the parties in entering therein to enable defendant to make a crop or crops during that crop season and to provide himself with the provisions necessary for carrying on his work, and as said in Bank v. Howell:

"It was in the contemplation of their minds that no crop could be made unless the supplies were furnished, and that to fail to furnish the supplies at the time they were needed could result only in damage."

And we are bound to say that the parties had in mind the profits that would arise from the making of a crop; that was and of necessity must have been in contemplation of the parties at the time the mortgage was executed, for the mortgage covered the crops to be grown by defendant during that year.

In addition to the loss of the crop, there is a specific allegation that defendant owned eight head of work stock besides that used by his share cropper, which he was unable to employ for a period of 90 days in the work of cultivating his crops, and that said teams were of the reasonable usable value of $2.50 per day for said time, and that he was, in addition thereto, compelled to incur an extra expense of 50 cents per day during said period, and an item of this character was involved in the Howell case and held to be a proper item of recovery. The objection that the damages claimed are too remote and speculative was also considered in the Howell case and held to be not well taken.

The action of the court in directing a verdict for plaintiffs, without giving defendant an opportunity to offer evidence in support of the allegations of his answer was error, and the cause is, accordingly, reversed and remanded for a new trial in accordance herewith.

All the Justices concur, excepting SHARP and THACKER, JJ., who concur except in the rule announced in the first paragraph of the syllabus.

THACKER, J. (concurring). I concur in the conclusion reached in this case and in

the opinion of the court, except that I think the holding that, "where the answer states a defense to plaintiff's cause of action, it is error to render judgment for plaintiff upon the pleadings and opening statement of defendant's counsel to the jury," is too broad as a general rule.

The answer being as shown by the opinion of the court, I agree that judgment should not have been rendered against the defendant upon the pleadings nor upon the following opening statement:

"Gentlemen of the jury. we expect the testimony in this case to show that the defendant had been trading with the plaintiffs for some two years. running an open account, and in April, 1911, he went to them, and he had 300 acres of land to put in, and he wanted to make an agreement with the plaintiffs to carry him for the crop season of 1911. He had 200 acres of oats, which at that time had failed, and he intended to put that land in fall crops, kaffir corn, milo maize, etc., and they agreed to carry him and did carry him for six weeks or two months, and then arbitrarily cut him off and breached the contract they had with him. About $80 was yet due him in groceries and provisions, according to the contract they had made, and the security he had given. Of course, the crops were in bad condition at that time, and on that ground, I presume, they refused to give him any more groceries or provisions under the contract. We claim he relied upon the contract, and because of the breach of the contract by the plaintiffs the defendant was prevented from planting and raising the fall crop as he had arranged to do; and, if we show this, we will expect a verdict at your hands."

I do not believe that a verdict should be instructed or a judgment rendered on account of the insufficiency of an opening statement to constitute a cause of action or ground of defense, nor under any circumstances unless it affirmatively and clearly appears therefrom that no cause of action or ground of defense exists, and that further procedure in the case would be useless.

As a general rule, it should not be done unless the defect or fatal negation of a cause of action or ground of defense in such opening statement is specifically brought to the attention of the party making the same, so that he may be afforded an opportunity to correct it; but when a party distinctly and unequivocally makes an opening statement showing affirmatively that, notwithstanding he may have filed in the case a good and sufficient pleading. he has no cause of action or ground of defense. and does not offer to withdraw or correct it when the effect of the same comes into question on a request for an instruction or judgment. I believe a ver-

dict may be directed or a judgment summarily entered thereon.

In the case of Patterson et al. v. Morgan. 53 Okla. 95, 155 Pac. 694, this court held:

"An oral admission of a material fact, made by an attorney in his opening statement to the jury, if distinct and formal, and made for the purpose of dispensing with the formal proof of some fact at the trial, is a solemn admission and conclusive upon the party making such admission. Where, however, the so-called admission is not distinct and formal. but equivocal and of doubtful meaning, and where there immediately follows the making of the so-called admission, the further statement that opposing counsel will be expected to prove their case as they stated it, such statement or admission will not supply proof of a fact material to the plaintiff's right of recovery.

"Where the statement of counsel is not such as to constitute it a solemn admission of some controverted question of fact, it is error for the court, over the objection of the opposing party, to so instruct the jury; the province of the jury being to determine all questions of fact."

This holding does not limit the power of the court to direct a verdict or render a judgment upon opening statements to such as are "made for the purpose of dispensing with formal proof," as will be seen from reading all of the opinion relating to this question.

And in First State Bank of Keota v. Bridges, 39 Okla. 355, 135 Pac. 378, it was held:

"Where defendant by answer admits the usurious character, in their inception, of notes, which do not appear usurious upon their face, and that, as indorsee of original payee, he took and received of their maker, in their payment, the usurious interest for which they covertly provided, denying no fact essential to plaintiff's recovery of penalty under section 3, art. 14 (section 314, Williams' Ann. Ed.), Constitution of Oklahoma, except knowledge of such usurious character, and where his opening statement to the jury distinctly and unequivocally discloses a state of facts amounting to such knowledge and absolutely entitling plaintiff to a verdict, it is not error to instruct such verdict upon motion therefor."

In the case of Mascho et al. v. Johnson, 49 Okla. 646, 153 Pac. 630, cited in the opinion of the court, it appears from the briefs that the motion was merely for judgment on the pleadings, although the court, in response thereto, stated that it gave judgment upon the pleadings "and statement of counsel"; and in Sullivan v. Williamson et al., 21 Okla. 844, 98 Pac. 1001, the motion was "upon the ground that the facts as stated in the pleadings and

opening statement did not entitle the plaintiff. to any relief," while it is stated in the opinion that:

"In this case it (the opening statement) was not preserved, so we have no means of knowing upon what facts the court granted a nonsuit."

It appears that no cause has been before this court in which it affirmatively appeared from a distinct and unequivocal opening statement that there was no cause of action or ground of defense; but the rule stated in the instant case and in each of the last two mentioned above is in conflict with the rule announced in Patterson et al. v. Morgan, supra, and First State Bank of Keota v. Bridges, supra, and is so broad as to be understood to apply in cases of the most deliberate, the most explicit, and unequivocal opening statements, as well as in such cases as the last cited above.

In 10 Modern American Law, p. 173, it is said:

"The opening statements of the parties are binding upon them, and in some jurisdictions judgment may be entered at the close of plaintiff's opening statement, if in making the statement he had failed to state a cause of action. Usually, however, counsel in making opening statements are not held to such a strict rule, and may be allowed to add to the statements, or to introduce evidence of matters not contained in them."

And in Oscanyan v. Winchester Repeating Arms Co., 103 U. S. 261, 26 L. Ed. 539, it is held:

"The trial court may direct a verdict for the defendant upon the opening statement of the plaintiff's counsel."

In that case it was said in the opinion:

"Of course, in all such proceedings nothing should be taken, without full consideration, against the party making the statement or admission. He should be allowed to explain and qualify it, so far as the truth will permit; but if, with such explanation and qualification, it should clearly appear that there could be no recovery, the court should not hesitate to so declare and give such direction as will dispose of the action.

"Here there were no unguarded expressions used, nor any ambiguous statements made. The opening counsel was fully apprised of all the facts out of which his client's claim originated, and seldom was a case opened with greater fullness of detail. He dwelt upon and reiterated the statement of the fact which constituted the ground of the court's action in directing a verdict for the defendant, namely. * * *"

I think the opinion in the instant case erroneously states the rule in the respect I have stated and undertaken to show above.

SHARP, J., concurs in the views herein expressed.