## THE HAMBURG-AMERICAN PACKET COMPANY

### *v.*

### REGINA GATTMAN.

*Filed at Ottawa April 3, 1889.*

1. CARRIERS—*freight—baggage—distinction, as to liability as carrier, in case of loss.* Where merchandise to be used in trade is packed in a trunk and shipped as personal baggage, the carrier having no notice of the contents, the liability of the latter therefor, as a common carrier, does not attach.

2. The mere payment of extra compensation on account of the over-weight of baggage does not convert such baggage into freight.

3. But in the case of an emigrant, who carries with him trunks and other ordinary baggage, and who also turns over to the carrier a number of boxes of goods for transportation, and pays freight for the weight in excess of his allowance as to baggage, and the general character of the shipment is known to the carrier, the courts will not conclusively presume the entire shipment is of baggage, and, in case of a

loss, hold there can be no recovery except for such articles contained in the boxes as may properly be designated as necessary baggage.

4. A packet company received a box of an emigrant's goods at Hamburg, to be carried to the port of New York, and there safely delivered. Upon the arrival of the vessel carrying the goods, at New York, the owner caused a seasonable and proper demand to be made upon the company for the goods, which failed to deliver them or show any justification for non-delivery : *Held,* that the facts showed a right of recovery by the owner of the goods, against the company.

5. APPEALS—*reviewing questions of fact.* In an action against a common carrier, to recover for the loss of goods shipped, this court is permitted, by section 89 of the Practice act, to examine the record as to questions of law only, and the determination of the trial and Appellate courts upon all controverted questions of fact is conclusive.

6. The judgment of the Appellate Court is final, not only in respect to the principal and ultimate facts upon which the right of recovery or ground of defense is claimed or based, but also in respect to the evidentiary and subordinate facts, which are mere evidence of such principal facts.

7. ERROR WILL NOT ALWAYS REVERSE—*erroneous ruling as to measure of damages.* A judgment sustained by the evidence and the findings of the Appellate Court will not be reversed on account of the giving of an instruction as to the measure of damages, when it clearly appears, from the evidence, that the jury were not misled by it, or that it injuriously affected the party complaining.

8. PRACTICE—*directing what the verdict shall be.* Where there is evidence before the jury tending to prove every necessary element of the cause of action alleged in the declaration, an instruction to the jury to find for the defendant is properly refused.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. LORIN C. COLLINS, Judge, presiding.

This was an action on the case, brought by Regina Gattman, against the Hamburg-American Packet Company, to recover damages for the failure of said company to carry a certain box of goods belonging to the plaintiff, from Hamburg, Germany, to the city of New York, and to deliver the same to the plaintiff at New York, whereby said goods became lost to the plaintiff. The declaration consists of four counts, three of which allege the delivery of said goods by the plaintiff to the defendant, to

be carried and delivered, as aforesaid, for certain reward, the failure of the defendant to so carry and deliver the same, and the consequent loss of said goods, the other count being an ordinary count in trover. The trial before the court and a jury, in the Cook circuit court, resulted in a verdict in favor of the plaintiff, for $1604.30, and for that sum and costs the plaintiff had judgment. The judgment was subsequently affirmed, upon appeal, in the Appellate Court for the First District, and the case is now, by further appeal, brought to this court.

In the early part of February, 1883, the plaintiff, being about to emigrate from Buda-Pesth, Hungary, her former place of residence, to the United States, packed such goods as she desired to take with her, in nine boxes, numbering them consecutively from 1 to 9, and forwarded them to the defendant, at Hamburg, to be shipped to New York. The plaintiff arrived at Hamburg, and sailed February 14, as a steerage passenger, on the defendant's steamship *Wieland*, bound for New York. But four of her boxes, viz., those numbered from 1 to 4, arrived at Hamburg in time to be shipped by the *Wieland*, the other five being shipped a few days later by the defendant's steamship *Hammonia*. All of said boxes arrived in New York, and were there ultimately delivered to the plaintiff, except box No. 1.

The plaintiff was accompanied by her daughter, Clara Phillipsborn, and two children, by her son, Henry, and by two young women, all of whom came with her from Buda-Pesth. It appears that the *Wieland* landed at Hoboken, and that the steerage passengers, including the plaintiff and her party, together with their baggage and effects, were there placed on a steam barge and taken over to Castle Garden, New York. The plaintiff was met at Hoboken by Maximilian Phillipsborn, her son-in-law, who, as it seems, immigrated to the United States some seven months previously. Phillipsborn went on board the steamship as it reached the wharf, and, after assist-

ing the plaintiff in getting together her hand-baggage, under-took to search for her boxes. The evidence shows that he searched both on shipboard and among the baggage landed at Hoboken, but failed to find them. He then inquired of one of the defendant's employes in attendance, who suggested that possibly the boxes would come by another ship, but as-sured him that they would be all right and would soon be along, and that the plaintiff would get them. On reaching Castle Garden, he again inquired of the defendant's agents, and received substantially the same response. The next day he went to the defendant's freight office in New York, and in-quired for and described the boxes, and was again met by the same assurance that they would come all right. Upon his insisting that he could not afford the expense of remaining in New York to await their arrival, and that he must have them at once, he was referred to another party, to whom he again gave an explanation of the matter, and who told him to go back to Hoboken, assuring him that he would find the boxes there. He accordingly returned to Hoboken and applied to the defendant's freight agent, and was directed by him to look all around and see whether he could find them. He thereupon made thorough search, but the search proving fruitless, he was told to go again to Castle Garden, as the boxes might be there. He then returned to Castle Garden, and made a thorough search there, but with like result. He then went to the defendant's office and demanded the boxes of the defend-ant's manager, telling him that he could not remain longer in New York, and that he wished to take the boxes with him on his journey to Chicago; that he had a given number of rail-road tickets for the party, upon each of which he was entitled to free transportation of one hundred and fifty pounds of baggage. The manager then told him that if they would go West by the Erie railroad, he would ship the boxes later by that road, and arrange for their transportation the same as though taken along with the party, but as Phillipsborn had

already procured tickets by the Pennsylvania railroad, this arrangement could not be made. The party, however, remained in New York another day, and on that day Phillipsborn again made search and inquiry for the boxes, both at Hoboken and Castle Garden, but entirely failed to get any trace of them. The plaintiff thereupon left an order for their delivery, when found, to Rothfeld, Stern & Co. of New York, and came on with her party to Chicago. Subsequently, three of the four boxes shipped by the *Wieland*, and the five boxes shipped by the *Hammonia*, were delivered by the defendant to Rothfeld, Stern & Co., and were forwarded by them to her. Box No. 1 was never delivered.

There is considerable conflict in the evidence in relation to the marks or directions placed by the plaintiff on the missing box before it was shipped, the defendant's evidence tending to show that it was marked and directed to a Mr. Rothgerber, of Chicago, and that the plaintiff's name was not on it, while the plaintiff and several of her witnesses testify that all the boxes were marked with the name of Regina Gattman, in care of Rothgerber, Chicago, before they were shipped from Hamburg.

The defendant gave evidence showing that by the rules and usages of the custom house, the baggage of steerage passengers arriving at New York was examined by the custom house officers on the deck of the ship or at the wharf; that it was the duty of the passengers claiming the baggage to open it and allow an officer to examine it, and if nothing dutiable was found in it, it was taken to the general baggage room of the Commissioners of Emigration at Castle Garden for registration, and then delivered to the owner; that whenever dutiable articles were found, the inspector making the examination marked the packages containing such articles, and attached thereto checks labeled "U. S. Customs," and bearing numbers, at the same time giving duplicate checks to the owner, and sent the package to the bureau of customs at Castle Garden for the determination and collection of the duties; that if the owner, for

any reason, declined or neglected to open the baggage, or if no owner appeared, the baggage was seized and sent to the bureau of customs, and when no owner presented himself to receive the duplicate checks, both the check and duplicate were attached to the baggage; that such baggage was under the control of the surveyor of the port from the time of its examination on deck or at the wharf to the time of its delivery at said bureau, and that it there passed into the charge and under the control of the officers of the custom house, and so remained until it was determined who was entitled to it, and the duty was paid or it was released from duty, and that the steamship company had no further control over it, and had no right to interfere, unless acting as the representative of the owner, and by his authority. Unclaimed immigrants' baggage was placed in a public store-room connected with said bureau, and was there kept in charge of the custom house officers for at least one year, and the packages were then opened and the contents appraised by said officers, who afterwards disposed of them by sale at public auction.

The defendant gave evidence tending to show that all the baggage on board the *Wieland* was discharged on the day of her arrival; that after the passengers had left, one of the defendant's agents whose duty it was to look after "left baggage," found three boxes on the deck marked "Rothgerber," but having no mark or number indicating that they belonged to the plaintiff, and put them into the baggage-room and locked them up, and that said boxes appeared, at the time, to have been opened. The defendant also gave evidence tending to show, that while the baggage discharged from the *Wieland* was being examined, an emigrant runner named Baschkopf called the attention of one of the inspectors making the examination, to two boxes lying on the wharf, and endeavored to bribe him to pass them without examination, and on being asked who owned them, said they belonged "to a girl over there;" that the inspector declined the proffered bribe, and told Baschkopf

to open the boxes, and upon his neglecting to do so, the inspector marked them "P. S.," (meaning public stores,) with the number of his badge; and, after attaching a brass check to each, put them on the barge, and conveyed them to Castle Garden, and delivered them to the superintendent of the bureau of customs, and that duplicate checks were also attached to said boxes. The number on the check attached to one of said boxes was 23, and it appears by the entries made, at the time, in a book kept by said bureau, that the box bearing that check was marked "Rothgerber," and that the number 287 was placed on it by the revenue officers on its arrival at said bureau, that being its serial number in the order of its arrival. The evidence tends to show that said box was then placed in a storeroom or warehouse connected with said bureau, to which no person had access except the revenue officers, and that it was kept there for over a year; that the various packages of unclaimed goods which had remained in said warehouse for that length of time were then opened, catalogued and appraised by said officers, and that one of the packages appearing on said catalogue was described as being marked with the name of Rothgerber; that two days prior to the day fixed for the sale of unclaimed goods, said boxes and contents were placed on exhibition, under the custody and guard of said officers, and that on the day appointed said boxes were sold, one Lee becoming the purchaser of the box marked "Rothgerber." During the pendency of this suit, the defendant traced said box into the hands of said Lee, and thereupon obtained from him a box in a mutilated condition, which, as is claimed, is the box in question, and also the contents, or a portion of the contents, of said box. The box and contents were produced at the trial, and while a portion of the contents were admitted by the plaintiff to be her goods, she denied that the residue belonged to her, and her evidence tended to show that the box produced was not the box No. 1 in which she shipped her goods from Hamburg.

Messrs. MOSES & NEWMAN, for the appellant:

Under a freight declaration, appellee proved a passenger baggage case, and then submitted instructions suited to her *narr.* The confusion of instruction No. 2 was to mislead, and prejudicial error.

The plaintiff was not an absent consignee, but a steerage passenger, whose duty it was, upon arrival at the port of New York, to take charge of her baggage, and present it to the officers of the government for examination. The promise of the ocean carrier to deliver baggage or freight is necessarily subject to the revenue laws of the country. *Ohio* v. *Lohe,* 51 Ind. 181; *Wells* v. *Steamship Co.* 4 Cliff. 228.

As to what may be considered baggage, see *Woods* v. *Devin,* 13 Ill. 746; *Pardee* v. *Drew,* 25 Wend. 457; *Hawkins* v. *Hoffman,* 6 Hill, 586; Schouler on Bailments, 342, 343.

As to excluding presents, see *Richard* v. *Westcott,* 2 Bosw. 589; *Bell* v. *Drew,* 4 E. D. Smith, 59; *Railroad Co.* v. *Kennedy,* 4 Miss. 67.

As to usage and contract limitation, see Schouler on Bailments, p. 505; *Gibson* v. *Culver,* 17 Wend. 305.

No acceptance for reward arises when a passenger delivers, as his baggage, that which really secretes another's goods, or his own merchandise. *Dunlap* v. *Steamship Co.* 98 Mass. 371.

As to excess of baggage or valuables, the carrier is to be treated as a gratuitous carrier. Schouler on Bailments, 464, 465; Story on Bailments, sec. 550; *Sewall* v. *Allen,* 6 Wend. 335; "*The Delaware,*" 14 Wall. 579.

Where misdelivery occurs through the consignor's carelessness in directing the goods, the carrier is held blameless. *Bank* v. *Kaufman,* 12 Heisk. 161.

As to the practice at the port of New York, see *Murphy* v. *Commissioners,* 28 N. Y. 143; *Klein* v. *Packet Co.* 3 Daly, 390.

As to the history of the Federal legislation arising out of section 4281 of the Revised Statutes of the United States, see

*Norris* v. *Wright,* 13 Wall. 104; *Dunlap* v. *Steamship Co.* 98 Mass. 37; *Chamberlain* v. *Transportation Co.* 44 N. Y. 305.

As to "ordinary baggage," see "*The Ionic,*" 5 Blatchf. 538; *Nordmayer* v. *Loescher,* 1 Hilt. 499; *Nevins* v. *Bay State Co.* 4 Bosw. 225.

As to persons not dealing fairly with carriers, see *Railroad Co.* v. *Marcus,* 38 Ill. 220; *Railroad Co.* v. *Oehm,* 56 id. 293; *Railroad Co.* v. *Carrow,* 73 id. 348.

To pay extra compensation for over-weight does not convert baggage into freight. *Railroad Co.* v. *Marcus,* 38 Ill. 220.

As to the duties of custom house officers, see sections 3100 and 3103 of the Revised Statutes of the United States.

As to seizure under process, see Wood on Railways, 1596.

Messrs. Byam, Parkhurst & Weinschenk, for the appellee:

Carriers by water and by rail are excepted from the rule requiring a personal delivery to the consignee. They are required to land them on the wharf or other proper place, and give notice to the consignee or owner. *Chickering* v. *Fowler,* 4 Pick. 371; *Steamboat Co.* v. *Knapp,* 73 Ill. 506; *Crawford* v. *Clark,* 15 id. 561; *Cope* v. *Cord,* 1 Rawle, 203; *Hyde* v. *Navigation Co.* 5 I. R. 389.

This notice must be actual, and the carrier is considered as retaining the custody of the goods, and as responsible for their safety, until such notice is given and a reasonable time thereafter. *Crawford* v. *Clark,* 15 Ill. 561; *Salmon Falls Co.* v. "*The Langier,*" 1 Cliff. 396; *Gleadell* v. *Thompson,* 56 N. Y. 194; *McAndrew* v. *Whitlock,* 52 id. 40; *Russell Manf. Co.* v. *Phan. Bost. Co.* 50 id. 12.

Moreover, in the case of carriers by water, merely landing the property on the wharf at the end of the voyage is not a good delivery, without, at the least, giving notice to the consignee of its arrival. This is a sound doctrine, as a delivery implies mutual acts of the carrier and the consignee. *Sprague* v. *Railroad Co.* 52 N. Y. 637; *Ostrander* v. *Brown,* 15 Johns.

39; *Price* v. *Powell,* 3 N. Y. 322; *Gibson* v. *Culver,* 17 Wend. 305; *Packard* v. *Getman,* 4 id. 613; *McAndrew* v. *Whitlock,* 52 N. Y. 40.

Furthermore, where the carrier fails to give this notice, his common law liability as the insurer of the goods continues. *Sprague* v. *Railroad Co.* 52 N. Y. 657.

Undoubtedly the promise of the carrier to deliver the goods is subject to the revenue laws of the country; but it has been held by one of the ablest courts in the United States, that where the goods are being landed under a permit, and with the supervision of an inspector, the carrier is not relieved from his duties and liabilities for the delivery. The consignee, it was held, is entitled to an absolute delivery of the goods from the master of the vessel. *Redmund* v. *Steamship Co.* 46 N. Y. 578.

This absolute duty of the carrier to make a delivery will sometimes be excused, when the goods are taken out of his possession by process of law, either *mesne* or final. The qualifications to this doctrine, however, should be carefully considered always. As Mr. Justice Story says, the bailee may excuse himself by showing that the goods were demanded and taken from him by a person having a superior title to the property. Notice is required to be given of adverse claims. 2 Parsons on Contracts, 204.

But the carrier will not be excused because of the seizure of goods under a process of law, even when such seizure is made at the instance of a third party who is entitled to the immediate possession of the goods as the rightful and absolute owner of them, unless the carrier gives prompt notice to the consignor, or other person from whom he received them, of the said seizure, in order that the consignor may have the opportunity of showing his title, if any, to the goods, or of protecting his interest in them. *Bliren* v. *Railroad Co.* 36 N. Y. 403; *Railroad Co.* v. *Lohe,* 51 Ind. 181; *Mierson* v. *Hope,* 2 Sweeney, 561; 104 Mass. 164.

Not only must the goods be taken from the carrier by one entitled to them by virtue of superior title, but the process or proceedings under which they were taken by the officer must be legal and valid, and such as would empower him to make the seizure, for should process be void because issuing from a court having no jurisdiction, or for any other reason, the officer would be a mere trespasser, and the carrier would be no more obliged to submit to his act, under the process, than to those of any other wrongdoer. *Railroad Co.* v. *Wilcox,* 48 Ga. 432; *Bliren* v. *Railroad Co.* 36 N. Y. 403; *Edwards* v. *Transit Co.* 104 Mass. 159; *Kiff* v. *Railroad Co.* 117 id. 591.

Mr. Justice Baker delivered the opinion of the Court:

In the class of cases to which the present controversy belongs, we are permitted, by section 89 of the Practice act, in force July 1, 1877, to examine the record as to questions of law only, and the determination of the circuit and Appellate courts upon all controverted questions of fact is conclusive. The judgment of the Appellate Court is final, not only in respect to the principal and ultimate facts upon which the right of recovery or ground of defense is claimed or based, but also in respect to the evidentiary and subordinate facts, which are mere evidence of such principal facts. *Bridge Co.* v. *Comrs. of Highways,* 101 Ill. 518; *Fitch* v. *Johnson,* 104 id. 118; *Edgerton* v. *Weaver,* 105 id. 43.

It is urged, however, that as at the close of the trial in the circuit court the appellant interposed a motion, which was overruled, and an exception taken, asking the court to direct the jury to find a verdict for the defendant, a question of law is thereby presented to this court. This motion can not now avail the appellant, for we find, upon examination of the testimony in the record, that there was evidence before the jury tending to prove every necessary element of the cause of action alleged in the declaration, and the action of the trial court was therefore proper.

It is insisted that the seizure and sale of the box of goods known as case No. 1, by the revenue officers of the United States, whether rightful or wrongful, relieved the carrier of all liability.   The evidence of appellee and her witnesses tended to show that the box which was taken by the government officers was not the box which was lost by her.   The trial court, at the instance of appellant, instructed the jury as follows:

"If the jury believe, from the evidence, that the case was the one seized on its arrival by the government officers, either because it actually contained or because the government officials supposed that it contained dutiable goods, and was immediately removed from the company's dock, with or without notice to the defendant company of such seizure and removal, and thereafter held and disposed of by the United States government officers, whether such removal, seizure, holding and disposal were rightful or wrongful, the defendant company is exonerated from all charge of negligence, and your verdict must be for the defendant."

It follows that the jury, in returning a verdict in favor of the plaintiff below, necessarily found, under the instructions of the court, against the identity of the box which was produced in court at the trial with the one which she lost, and that there was no sufficient proof that the missing box of appellee was seized, on its arrival, by government officials.   This controverted question of fact having been decided by the jury and trial court in favor of appellee, and the judgment having been affirmed by the Appellate Court, the correctness of the conclusion reached can not now be called in question.

Appellee was an emigrant, and she carried with her, in addition to the nine boxes of goods mentioned in the statement of the case, three trunks and thirteen pieces of hand-baggage. It seems she was entitled, under her passage ticket, to have a certain portion of her effects carried free, but was obliged to pay, as freight, for the residue of her effects, at the rate of fifty marks per cubic meter.   The declaration is based on the

theory of the shipment of the nine boxes as merchandise or freight. The contention of appellee at the trial was, that the missing box of goods was shipped as freight, and the contention of appellant was, that it was shipped as baggage, and that the doctrine of reasonable baggage was applicable to the case. Both theories of the evidence were submitted to the jury by the instructions of the court, and it is manifest, from the verdict, that they decided the point in favor of appellee. The mere payment of extra compensation on account of the over-weight of baggage does not convert such baggage into freight, and where merchandise to be used in trade is packed in a trunk and shipped as personal baggage, the carrier having no notice of the contents of such trunk, the liability of the latter therefor, as a common carrier, does not attach, as was held by this court in *C. and C. Railroad Co.* v. *Marcus,* 38 Ill. 223, and *Michigan Southern and Northern Indiana Railroad Co.* v. *Oehm,* 56 id. 293. But in the case of an emigrant who carries with her trunks and other ordinary baggage, and also turns over to the common carrier a number of boxes of goods for transportation, and pays freight for the weight in excess of her baggage allowance, 'and the general character of the shipment is known to such carrier, it would be unjust to conclusively presume the entire shipment was as baggage, and that there could, in case of loss, be no recovery except for such articles contained in the boxes as would properly be designated as necessary baggage.

Complaint is made that the court, at the instance of appellee, instructed the jury, in respect to the measure of damages, that if the cause of action was established, then the plaintiff was entitled to recover the value of the goods which the defendant failed to deliver upon demand made. It is claimed, that in view of section 4281 of the Revised Statutes of the United States, and of the evidence that certain articles made in whole or in part of silk or lace were contained in the lost box of goods; the instruction was erroneous. The instruc-

tion, however, was qualified by such clauses as, "for which you may find the defendant liable under the evidence and instructions of the court," and "unless you believe, from the evidence, that the defendant was excused from such delivery by such cause as is set out in instructions given you for the defendant." And in one of the instructions given for the defendant, the attention of the jury was called to said section 4281 of the statute, and they were expressly told that "the plaintiff is not entitled to recover from the defendant the value of any articles which the jury may believe, from the evidence, to have been contained in case No. 1, which are composed of silk, in a manufactured or unmanufactured form, wrought up or not wrought up, with any other material, furs or laces, unless the jury further find, from the evidence, that the defendant received from the plaintiff a written notice of the true character and value of the same at the time defendant received such case; and the court instructs the jury, that in assessing damages against the defendant, if they shall find the defendant guilty, they must omit entirely from their estimation all such articles as those above described." In her testimony appellee stated the aggregate value of the goods contained in case No. 1, to be $2336, and the evidence indicates that the value of the lace and silk goods which came within the purview of section 4281 of the statute, were of the value of some $600, and the verdict of the jury was for only $1604.30. It would seem, therefore, that the jury were not misled by the instruction under consideration, but in applying it to the evidence, gave due effect to the qualifications contained therein, and to the subsequent and qualifying instruction of the court above quoted. We are unable to say the giving of the instruction complained of was error, or injuriously affected the rights of appellant.

Several other of the instructions given for appellee were not strictly accurate, and were open to verbal criticism, but in their statements of the law applicable to the case there was

no substantial error. The jury was fully and fairly instructed in behalf of appellant in some twenty-three instructions given at its request, and we find no error in the refusal of the two or three that were denied by the court.

This case has been submitted to two juries in the trial court, and with substantially the same result. The present judgment has been twice considered in the Appellate Court, and both such considerations have been followed by orders of affirmance. In the opinion filed in the latter court, after the rehearing of the cause, it was said: "After two examinations of the evidence in this case, we are satisfied it shows a cause of action against the defendant below, as a common carrier. The defendant received a case of plaintiff's goods at Hamburg, to be carried to the port of New York, and there safely delivered to the plaintiff. At that port, upon the arrival of the ship carrying the goods, the plaintiff caused a seasonable and proper demand to be made upon the defendant for the goods, and the defendant failed to deliver them or inform plaintiff where they were. They were lost. That made a cause of action, and the defendant failed to show any legal justification in the premises."

The issues of fact involved in the case were, as we have seen, conclusively settled in favor of appellee by the verdict of the jury and the judgment of affirmance in the Appellate Court. In our examination of the record we find no such error in the rulings of the trial court upon the instructions, or otherwise in respect to the law of the case, as would justify a reversal. The judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*

Mr. JUSTICE BAILEY, having heard this case in the Appellate Court, took no part in its decision here.