# KANSAS CITY, M. & O. RY. CO. *et al.* v. FUGATT.

## No. 3965.   Opinion Filed July 13, 1915.

### (150 Pac. 669.)

1. **CARRIERS—Baggage—Liability as Insurer.** A carrier, with respect to baggage accompanying a passenger, intrusted to its custody, incurs the responsibility of a common carrier of goods, and is liable as an insurer of the baggage, except where the loss or damage is caused by the act of God, the act of the owner, or by the public enemy.

2. **SAME—Duty of Carrier.** It is the duty of the carrier to deliver a passenger's baggage, whether within the weight prescribed by statute or not, immediately upon the arrival of the passenger at his destination.

3. **EVIDENCE—Judicial Notice—Custom of Carriers—Baggage.** It is a matter of general knowledge, of which courts will take judicial notice, that common carriers by rail make a practice of carrying as baggage the sample trunks of traveling salesmen.

4. **CARRIERS—Baggage—Liability.** Where a carrier accepts as baggage the sample trunks of a traveling salesman, with knowledge of their character, it thereby waives any objection on the ground that such trunks and contents are not properly baggage, and its liability therefor is the same as that with reference to baggage as defined in section 806, Rev. Laws 1910.

5. **SAME—Delay in Forwarding Sample Trunks—Measure of Damages.** The measure of damages for a carrier's delay in forwarding the sample trunks of a traveling salesman is the value of the use of the property during the delay, together with the loss of time occasioned thereby; the carrier's agent receiving the trunks for transportation with knowledge of their contents and intended use.

6. **SAME—Contemplated Damages.** Loss of time and inability to make sales because of delay in receiving trunks containing samples will be regarded as within the contemplation of the carrier when it receives and checks a salesman's sample trunks as baggage, so as to entitle him to recover damages therefor in case of such delay.

7. **SAME—Damages Recoverable.** Such damages as proximately flow from the breach of the contract of carriage of baggage, or which, in the language of the statute, "in the ordinary course of things would be likely to result therefrom," may be recovered, and this includes loss of time and inability to make sales directly occasioned by the breach of duty promptly to carry and deliver.

(Syllabus by the Court.)

*Error from District Court, Garfield County;*
*James B. Cullison, Judge.*

Action by W. D. Fugatt against the Kansas City, Mexico & Orient Railway Company and another. Judgment for plaintiff, and defendants bring error. Affirmed.

*Ames, Chambers, Lowe & Richardson,* for plaintiff in error Kansas City, M. & O. Ry. Co.

*W. F. Evans, R. A. Kleinschmidt,* and *J. H. Grant,* for plaintiff in error St. Louis & S. F. R. Co.

*Parker & Simons,* for defendant in error.

SHARP, J.   For convenience the plaintiff in error Kansas City, Mexico & Orient Railway Company will be referred to as the Orient, and the St. Louis & San Francisco Railroad Company as the Frisco, and the defendant in error, W. D. Fugatt, as the plaintiff.

The action was brought by the plaintiff to recover damages for loss of time and expenses incurred on account of the alleged negligence of the railroad companies named in delivering to him at Enid two large sample trunks.   On April 8, 1910, plaintiff, desiring to go to Longdale, a station on the Orient road, checked his sample trunks and telescope from Custer City to the latter station.   Custer City is a station on the line of both the railroads named, where both use the same depot and maintain a joint agency.   The sample or hat trunks were large, much larger in fact, it was said, than the ordinary traveler's trunk.   They were described by the plaintiff as follows:

"One is a large trunk, dimensions 42 inches by about 42 inches.   And the other is about 43 by 36."

The depth of the trunks does not appear in this connection.   The trunks were numbered and labeled, the label being in red paint.   One trunk, it appears, was brown,

the other black, while the glove telescope was of light color. The undisputed evidence was to the effect that the trunks had every appearance of being sample trunks, were unusually large, and had the appearance of being heavy, though not. The trunks carried 300 pounds excess baggage, which was paid by plaintiff in checking them to Longdale. During the afternoon at Longdale, plaintiff surrendered his baggage checks to a local transferman, whom he had procured to haul his trunks some nine miles across the country to Southard, a station on the line of the Frisco. In company with the transferman, plaintiff and another traveling man drove across the country to Southard. At this station it appears there was no night agent, and on arrival of the passenger train bound to Enid, plaintiff assisted the baggageman in loading his trunks in the baggage car, directing him to unload them at Enid. The train arrived at Enid about midnight, plaintiff assisting the baggageman in unloading the trunks at the depot. On calling for the trunks on Monday morning following, plaintiff was informed that they were not there, but had been returned to Custer City on account of having Orient checks on them. The baggage checks, it appears, for some reason had not been removed from the trunks when taken from the station at Longdale. After considerable futile correspondence between the agent at Enid and the Custer City agent, plaintiff, in an endeavor to recover his trunks, returned to Southard and drove across the country to Longdale, where the Orient agent at first refused to deliver them, but afterwards did so. The trunks had been returned from Enid to Custer City at the direction of the joint agent at the latter station, and were then forwarded by him to Longdale, where they were when found by plaintiff. Defendants each answered by general denial. The only witness who testified in the case, other than the plaintiff, was the Frisco station agent

at Enid, who testified as a witness for plaintiff. The trial resulted in a verdict for plaintiff against each of the defendants, for the value of the time actually lost in recovering the trunks, plus actual expenses incurred by plaintiff.

A carrier's liability for baggage is the same as that of a common carrier of property. Section 500, Comp. Laws 1909 (section 807, Rev. Laws 1910). By section 501 of the statute, it is made the duty of the carrier to deliver every passenger's luggage, whether within the prescribed weight or not, immediately upon the arrival of the passenger at his destination. While the baggage or luggage was not of the character prescribed by section 499 of the statute, it was accepted and carried by each of the carriers named as baggage, and it is a rule well recognized that where a carrier accepts as baggage wares or merchandise not properly having that character, with knowledge that they are offered for transportation as baggage, such carrier thereby waives any objection on that ground, and its liability therefor is the same as that with reference to baggage in general. *Kansas City, Ft. S. & M. R. Co. v. McGahey*, 63 Ark. 344, 38 S. W. 659, 36 L. R. A. 781, 58 Am. St. Rep. 111; *Hamburg-American Packet Co. v. Gattman*, 127 Ill. 598, 20 N. E. 662; *Dahrooge v. Pere Marquette R. Co.*, 144 Mich. 544, 108 N. W. 283; *New Orleans & N. E. R. Co. v. Shackelford*, 87 Miss. 610, 40 South. 427, 4 L. R. A. (N. S.) 1035, 112 Am. St. Rep. 461, 6 Ann. Cas. 826; *Toledo & R. C. R. Co. v. Bowler & B. Co.*, 57 Ohio St. 38, 47 N. E. 1039, 63 Am. St. Rep. 702; *Fleischman v. Southern R. Co.*, 76 S. C. 237, 56 S. E. 974, 9 L. R. A. (N. S.) 519.

Without expressing an opinion as to the soundness of the former decisions of this court in *Choctaw, O. & G. R. Co. v. Zwirtz*, 13 Okla. 411, 73 Pac. 941, and *St. Louis*

& S. F. R. Co. v. Dickerson, 29 Okla. 386, 118 Pac. 140, it will be seen that the facts presented thereby differ materially from the present case.  If it was intended in said decisions to lay down a rule that recovery of damages could not be had by the owner unless the baggage or luggage was intended for the personal use of a passenger while traveling, or for his personal equipment as defined in the earlier opinion, notwithstanding the common practice of carriers to accept for carriage luggage of a different character, such as trunks, suit cases, and telescopes of traveling salesmen, then we disapprove and refuse to follow such rule.  Though the real character of the articles tendered as baggage, but which are not properly such, is not stated to the carrier when it accepts them for carriage, if from the facts and circumstances surrounding their acceptance it ought to know that they are not properly baggage, knowledge on its part of their true character will be presumed, and it will be considered as having assumed the liability of a common carrier.  Hutchinson on Carriers, section 1250; Elliott on Railroads, section 1649. We have already seen the character of the trunks received· for transportation, and shall notice the question of imputed notice more fully later on.

The liability of a common carrier for the loss of baggage, at common law, is, in section 1651, Elliott on Railroads, defined to be:

"The general rule is that the carrier is liable for baggage as a common carrier; that is, it is liable for the loss or injury to the baggage at all events, except where the loss or damage is caused by the act of God, or 'unavoidable accident' in the sense in which the term is sometimes used, and the act of the owner, or by public enemies."

And it is thus stated in 3 Am. & Eng. Enc. Law, 546:

"The liability of a carrier for baggage of a passenger intrusted to its care is that of an insurer; and its liability, unless specially restricted, is the same as its common-law

liability as a carrier of goods." *Oakes v. Northern Pac. R. Co.,* 20 Or. 392, 26 Pac. 230, 12 L. R. A. 318, 23 Am. St. Rep. 126, 46 Am. & Eng. R. Cas. 437; *Wood v. Maine Cent. R. Co.,* 98 Me. 98, 56 Atl. 457, 99 Am. St. Rep. 339, and note; *Hannibal & St. J. R. R. Co. v. Swift,* 12 Wall. 262 (79 U. S.) 20 L. Ed. 423.

The rule announced is the correct one where custody and control of the baggage has been surrendered into the carrier's keeping by the passenger. Many interesting, if not difficult, legal questions have arisen in cases where the passenger has seen fit to keep with him articles of personal baggage.

The case appears, however, to have been tried upon the theory of the defendants' negligence, and of this there was ample evidence. That the baggage agent of the Frisco at Enid, with knowledge that the trunks belonged to plaintiff, and were to be delivered to him at his destination at Enid, shipped them back to Custer City, aside from other acts of negligence proven, clearly establishes the Frisco's liability. That the joint agent of both the Orient and Frisco at Custer City wired the Frisco agent at Enid to return the baggage, aside from other acts of negligence, not only of the joint agent, but of the Orient agent at Longdale in refusing to return the trunks after they had been returned to him, furnishes proof conclusive of the negligence and liability of the latter company.

In fact, of the defendants' liability there can be no room for doubt, the only troublesome question being that of the measure of plaintiff's recovery. In the amended petition it was charged that defendants, through their agents and employees, knew that plaintiff was a traveling salesman, and that his trunks, carried as baggage, contained the samples used and carried by him in his business as a traveling salesman, and that without said trunks, containing his samples, he could not carry on his occupation as such. In checking the trunks from Custer City to

Longdale, plaintiff paid the joint station agent at the
former station on 300 pounds excess baggage. C. O. D.
slips for the excess baggage were made out by the bag-
gageman on the Frisco train from Southard to Enid. The
undisputed evidence was that plaintiff had had former
dealings, in the way of checking his baggage, with the
baggage agent at Enid, and that said agent on different
occasions had seen him open up and put new samples in
his sample trunks. At Longdale the trunks had not been
removed from the Orient station prior to the time the
transferman obtained them late in the evening to haul
across the country to Southard. Up to this time the
trunks had moved promptly, accompanying plaintiff on
each of his short journeys. It is a matter of common
knowledge, of which courts will take judicial notice, that
it is a general custom of railroad companies to transport
on their passenger trains, as the baggage of commercial
travelers, sample trunks containing the wares and mer-
chaidise of their employers, carried from place to place
with the salesman for the purpose of being used as sam-
ples in effecting sales. *McKibbin v. Great Northern R.
Co.*, 78 Minn. 232, 80 N. W. 1052; *Fleischman v. Southern
Ry. Co.*, 76 S. C. 237, 56 S. E. 974, 9 L. R. A. (N. S.) 519;
*Bergstrom v. Chicago, R. I. & P. R. Co.*, 134 Iowa, 223,
111 N. W. 118, 10 L. R. A. (N. S.) 1119, 13 Ann. Cas.
239. Scarcely a train travels the state but there is on
board a number of traveling salesmen, accompanied by
their sample cases or trunks, as the case may be. The
custom of making sales in stores and hotel sample rooms
from samples thus exhibited, is one of long duration and
general practice. To the railroad companies engaged in
the carriage of persons and property, these customs are
well known and in daily usage. Indeed the practice has
become a part of the daily life of the carrier and travel-
ing salesman. Few there would be so credulous as to
believe that the contents of two or more large sample

trunks of distinctive appearance and size constituted the personal baggage of the traveler, carried with him from town to town for his personal comfort or adornment, and apart from his business. Possessed with knowledge of the common practice of traveling salesmen to carry with them their samples, and it being a part of the carrier's business to handle daily such traffic, and with the further knowledge, common to all, that sales are very generally made from such samples, defendants knew that the failure to deliver promptly the trunks containing such samples would result in an interruption of plaintiff's business and a loss of time. All these were proper considerations for the jury in determining the question of notice. *Webb. v. Atlantic Coast Line R. Co.*, 76 S. C. 193, 56 S. E. 954, 9 L. R. A. (N. S.) 1218, 11 Ann. Cas. 834; *Sloman v. Great Western R. Co.*, 67 N. Y. 208; *McKibbin v. Great Northern R. Co., supra; McKibbin v. Wisconsin Cent. R. Co.*, 100 Minn. 270, 110 N. W. 964, 117 Am. St. Rep. 689, 8 L. R. A. (N. S.) 489; *Amory v. Wabash R. Co.*, 130 Mich. 404, 90 N. W. 22; *Trimble v. N. Y. C. & H. R. R. Co.*, 162 N. Y. 84, 56 N. E. 532, 48 L. R. A. 115; *Illinois Cent. R. Co. v. Matthews*, 114 Ky. 973, 72 S. W. 302, 60 L. R. A. 846, 102 Am. St. Rep. 316.

Notice in terms of the contents of the trunks was not required. It was sufficient if from all the circumstances of the case the jury might reasonably infer that the carriers' agents, charged with a duty of receiving and checking baggage from their respective lines, knew of the extraordinary contents of the trunks when received by them. Plaintiff was a traveling salesman of 11 years' experience. He traveled two months and two weeks in the spring of the year, and the same length of time during the fall season. He sold goods on a commission basis of 10 per cent., and the undisputed testimony was that his time was worth $30 per day.

This recovery, say both of the plaintiffs in error, cannot be allowed for the reason that it is speculative and conjectural. Section 2852, Rev. Laws 1910, provides that for the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided in said chapter, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. Section 2886 of the same statute provides that where certain property has a peculiar value to a person recovering damages for deprivation thereof or injury thereto, that may be deemed to be its value, against one who had notice thereof before incurring a liability for damages in respect thereto, or against a willful wrongdoer. While denying their liability, counsel for the Frisco say that if liable at all, section 2869, Rev. Laws 1910, furnishes a rule, fixing the measure of damages at the depreciation in the intrinsic value of the freight during the delay, and also the depreciation, if any, in the market value thereof, at the place where it ought to have been delivered. Plaintiff's action, in so far as the main item of recovery is concerned, is for damages for loss of time on account of the deprivation of his samples, and his measure of recovery is not governed by the statute in question. Counsel also rely upon the decision of the territorial court in *Choctaw, O. & G. R. Co. v. Jacobs,* 15 Okla. 493, 82 Pac. 502; but the facts in that case differ very materially from those presented by the record here, and the opinion, therefore, is not a controlling authority. To hold that plaintiff was without a remedy, save the recovery of nominal damages, would be to deny him any measure of redress. While, in the abstract, we realize the great difficulty often encountered in the matter of determining the correct rule for measuring damages, in the present case, keeping in sight the statute (section 2852, Rev. Laws 1910), no such difficulty

appears; and, in our judgment, plaintiff has clearly brought himself within the statute. That his time was worth $30 a day, except in the manner of ascertaining the fact, is not disputed. Plaintiff could not work without his samples. Of them he was deprived by the defendants' neglect of duty. His loss of time followed, proximately as the result of the defendants' wrong. The damages which he sustained were those, according to the testimony, which in the ordinary course of things would be likely to result. This is the precise language of the statute, and its purpose is to fix a rule whereby the damages may be estimated with a reasonable degree of accuracy.

In *Webb v. Atlantic Coast Line R. Co.*, 76 S. C. 193, 56 S. E. 954, 9 L. R. A. (N. S.) 1218, 11 Ann. Cas. 834, it was said that knowledge of the trunk being a salesman's trunk of samples, taken with him on a business trip, included knowledge that delay in its delivery would result in interruption of his business and loss of his time and custom, and it was held that:

"Loss from inability to sell goods because of delay in receiving the samples must be regarded as within the contemplation of the carrier when it checks a salesman's samples as baggage, so as to enable him to recover damages therefor in case of such delay."

To the same effect was the subsequent opinion of that court, in *Strange v. Atlantic Coast Line R. Co.*, 77 S. C. 182, 57 S. E. 724, where the carrier was held liable for the expense and detriment to the special business of the plaintiff, a traveling salesman. The opinion in part reads:

"When the carrier accepts goods for transportation, with notice that the owner requires them at the place to which they are to be carried for a special business purpose, the measure of damages for delay in carriage is the expense and detriment to the special business with reference to which the carriage was undertaken, fairly attributable to the delay, including expense and loss of time

reasonably incurred in the effort to find the delayed property."

In *Brooks v. Northern Pac. R. Co.*, 58 Or. 387, 114 Pac. 949, the action was for delay in transporting two sample trunks containing shoes. Upon the question of the proper measure of damages to which plaintiff was entitled, it was said by the court:

"The remaining question is the standard of indemnity for the loss which plaintiff sustained. The measure of a passenger's damages for a carrier's delay in forwarding his trunks is the value of the use of the property in the meantime. *Gulf, etc., R. Co. v. Vancil*, 2 Tex. Civ. App. 427, 21 S. W. 303; *Tex., etc., R. Co. v. Douglas* (Tex. Civ. App.) 30 S. W. 487. The plaintiff's testimony is to the effect that without samples he could not secure orders, and that during his stay in Butte competitors were in the field, at which time and place his average commission would have been $20.00 per day."

The judgment of the trial court, which was affirmed, allowed plaintiff recovery for two and one-half days' time and his expenses.

In *St. Louis, I. M. & S. R. Co. v. Campbell*, 108 Ark. 432, 158 S. W. 120, it is held that the measure of a passenger's damage for a carrier's delay in forwarding his trunk is the value of the use of the property during the time of the delay, citing Elliott on Railroads (2d Ed.) vol. 4, sec. 1662a; Hutchinson on Carriers (3d Ed.) sec. 1366; 6 Cyc. 676; *Tex. & N. O. R. Co. v. Russell* (Tex. Civ. App.) 97 S. W. 1090; *Mexican Cent. R. Co. v. De Rosear* (Tex. Civ. App.) 109 S. W. 949.

Our conclusions, while involving a somewhat different question, are in harmony with the former opinions of this court in *Ft. Smith & W. R. Co. v. Williams*, 30 Okla. 726, 121 Pac. 275, 40 L. R. A. (N. S.) 494, and *Cloe v. Rogers*, 31 Okla. 255, 121 Pac. 201, 38 L. R. A. (N. S.) 366.

· The loss of time to plaintiff on account of being, deprived of the use of his samples was reasonably worth $120, and the proof, tending to establish the amount of the damage, is not subject to the charge that it is speculative, remote, or conjectural. The proof shows that on account of being deprived of his samples, plaintiff lost one sale at Manchester of $600. The additional sum of $7.17 was incurred on account of telephone messages, livery hire, railroad fare, additional excess baggage on return of trunks to Enid, and was, of course, a proper item of recovery.

We have examined the several instructions complained of, as well as those refused by the trial court, and find that no error was committed either in the giving or refusal to give said instructions. Neither was there error committed in the admission of evidence.

The judgment of the trial court is affirmed.

All the Justices concur.