### TERRELL CO. v. DAVIS et al.

No. 9643.   Opinion Filed March 16, 1920

(Syllabus by the Court.)

1. **Damages—Breach of Contract Obligation—Measure of Damages.**

Revised Laws 1910, sec. 2852, provides that "for the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, which in the ordinary course of things would be likely to result therefrom."

2. **Oil and Gas—Breach of Drilling Contract Elements of Damages—Rental Value of Idle Tools.**

Where the breach of a drilling contract resulted in the enforced idleness of a string of tools of the plaintiffs for a period of time, the rental value of the tools for such period affords a proper element of damages, being detriment proximately caused by such breach, compensatory in their nature, and the amount to be recovered is a question for the jury under the instructions of the court.

3. **Appeal and Error—Verdict—Evidence.**

Where there is competent evidence reasonably tending to support the verdict of the jury, and the instructions of the court to the jury fairly state the law arising upon the issues raised by the pleadings and the evidence, the judgment rendered upon the verdict will not be disturbed by the Supreme Court. Dickinson v. Perry, 75 Okla. 25, 181 Pac. 504; McCoy v. Wosika, 75 Okla. 3, 180 Pac. 967; St. Paul F. & M. Ins. Co. v. Robinson, 72 Oklahoma, 180 Pac. 702.

4. **Oil and Gas—Breach of Drilling Contract—Damages—Review.**

Record examined, and no reversible error being apparent, the judgment of the trial court is affirmed.

Error from Superior Court, Tulsa County; M. A. Breckenridge, Judge.

Action by C. B. Davis and others, against the Terrell Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

Biddison & Campbell, for plaintiff in error.

Luther James, for defendants in error.

JOHNSON, J. On June 8th, 1915, the above named defendants in error, plaintiffs below, hereinafter called plaintiffs, commenced this action against the above-named plaintiff in error, defendant below, hereinafter called defendant, in the superior court of Tulsa county.

The material portion of the plaintiff's petition was as follows:

"2nd. The plaintiffs state and allege that on or about the _____ day of April, 1914, while acting through their agent, and one of their firm, C. W. Connelly, they made and entered into a contract with the defendant, acting through its agent, M. H. Connor, whereby the plaintiffs were to drill a certain well for the defendant in Creek county, Oklahoma, it being definitely stipulated between the said parties in said contract that the plaintiffs should come upon the Root farm in the southwest quarter of section 8, township 8, range 11, in Creek county, Oklahoma, and should drill a well for the defendant, eighteen hundred feet deep, and that then the plaintiffs should further have the right and privilege of the drilling of other wells for the defendant upon the same terms and conditions. The time of drilling such other wells to be immediately thereafter, but the drilling of the same to begin and proceed at a reasonable time thereafter to be designated by the defendant.

"3rd. The plaintiffs state that in order to do the drilling which was contemplated by such contract, it became and was necessary for them to buy a string of tools, which they bought at a great expense and moved them from Tulsa to the defendant's lease above described, at a great expense.

"4th. The plaintiffs allege and state that they duly and properly finished said first well on the 3rd day of June, 1914, and then and there offered to continue the drilling operations for the defendant which was contemplated and agreed to in the said contract; that they notified the defendant that they were ready and willing to continue the drill-

ing of said wells for the defendant, as per stipulations contained in said contract; that the defendant then directed the plaintiffs on the 19th day of June, 1914, to move their rig and string of tools upon the Collins farm nearby, on which the defendant had an oil and gas lease. In compliance with this direction and the said contract heretofore stated, the said plaintiffs did move their string of tools and drilling apparatus upon the said Collins farm upon the 19th day of June, 1914, and then and there notified the defendant that they were ready and willing to pursue the drilling in accordance with the said contract; that the plaintiffs were then informed by the defendant that it was the will and desire of the defendant that the drilling should proceed in a few days and that the defendant would notify the plaintiffs in a few days thereafter to proceed with said drilling; that in pursuance of this arrangement and believing in the good faith of the defendant in the premises, the plaintiffs left their tools upon said above lease and repeatedly thereafter went to the defendant and offered to drill a well for the defendant upon said lease or at any other place in that vicinity to which the defendant should direct them; that upon each occasion the defendant would direct the plaintiffs to keep said tools in readiness for the drilling of a well upon said Collins farm and directed and instructed the plaintiffs, who were ready and willing at all times to pursue said drilling operations, to wait for a short time; that this sort of delay occasioned by the defendant continued until the 19th day of May, 1915; that during all the period of time from the 19th day of June, 1914, to the 19th day of May, 1915, a period of three hundred and thirty-five days, the plaintiffs' tools and drilling apparatus were upon the Collins farm, which the defendant had leased as aforesaid, at the direction and instruction of the defendant, awaiting the time to be named by the defendant to begin the drilling operations contemplated by said contract, and that the plaintiffs went to the defendant as many as a dozen times during said period and insisted upon beginning the drilling of said well and informed the defendant that the tools were laying idle at a great expense, to-wit, twenty dollars per day, and were each time met with the statement and direction of the defendant to let said tools remain at said location and that the well would proceed in a few days.

"5th. The plaintiffs state that upon the 19th day of May, 1915, the defendant, in total disregard of its contract with the plaintiffs and in wanton disregard of the plaintiffs' rights in the premises and after keeping the plaintiff's tools upon the Collins farm as aforesaid, for the purpose of doing their drilling for a period of three hundred and thirty-three days, made and entered into a contract with another firm to do the drilling upon said lease and totally broke and breached their contract with the plaintiffs.

"6th. The plaintiffs state that the reasonable rental value of said tools during the period from June 19, 1914, to May 19, 1915, was twenty dollars per day and that said tools could have been rented for said amount and could have been earning plaintiffs said sum had they been priviliged by the defendant to use them, which fact was well known and considered by the defendant.

"7th. The plaintiffs state and allege that by reason of the defendant breaching its contract with the plaintiffs and in keeping the plaintiffs' tools upon its premises for the said period of three hundred and thirty-three days, and not permitting the plaintiffs to use or get the benefit of the rent for the same, the plaintiffs were damaged in the sum of twenty dollars per day, or the total sum of six thousand, six hundred and sixty dollars.

"8th. The plaintiffs state and allege that they performed all the conditions precedent upon their part contemplated by said contract and were ever ready, able and willing to perform all the terms and conditions of said contract."

The defendant answered, alleging as follows:

"(1) It denies each and every allegation contained in said petition not herein specifically admitted.

"(2) It admits it is a corporation organized under the laws of the state of Oklahoma.

"Defendant admits that the plaintiffs drilled a well for it on the Root farm, but says that the plaintiffs were paid in full for such drilling.

"(3) Defendant states that instead of employing the plaintiffs to do further drilling for it and in requesting them to hold their drilling outfit and machinery there ready to do drilling, the defendant particularly and directly notified the plaintiffs that they would want no further services from the plaintiffs; that it would want no more drilling done and that it could not give them further employment; that the Corporation Commission of the state of Oklahoma had issued an order forbidding the drilling of any but necessary offset wells in the state of Oklahoma, and had notified the defendant not to drill any further or other wells than necessary offset wells, and the defendant had no necessary wells to drill and did not agree with the plaintiffs in any form whatever that they could do further drilling, nor did it request them to hold their machinery on the Collins farm or elsewhere for the defendant."

To which answer the plaintiff replied by a general denial.

The cause was tried to a jury, which resulted in a verdict in favor of the plaintiffs in the sum of $3,500. The defendant filed its motion for new trial, which was overruled by the court and exception saved by the defendant, and this proceeding in error was

commenced on December 13, 1917, by the defendant filing its petition in error with case-made attached. The errors assigned are as follows:

"(1) The court erred in overruling plaintiff in error's motion for a new trial, to which ruling of the court plaintiff in error excepted at that time, and excepts.

"(2) The court erred in admitting irrelevant, incompetent and immaterial evidence offered by the defendants in error over the objections of the plaintiff in error, to which ruling of the court plaintiff in error at the time excepted and excepts.

"(3) The court erred in rejecting relevant, competent and material testimony offered by plaintiff in error and rejected by the court, to which ruling of the court the plaintiff in error at the time excepted and excepts.

"(4) The court erred in overruling the objections of the plaintiff in error to the introduction of any evidence by the defendants in error, to which ruling of the court the plaintiff in error excepted and excepts.

"(5) The court erred in overruling the application of plaintiff in error for peremptory instructions to the jury to find verdict for plaintiff in error, and to which ruling of the court plaintiff in error at the time excepted and excepts.

"(6) There was error in the assessment of the amount of recovery, the same being excessive.

"(7) Error of law occurring at the trial and excepted to at the time by plaintiff in error.

"(8) Judgment is contrary to law and not sustained by sufficient evidence and is contrary to the evidence.

"(9) Wherefore, plaintiff in error prays that said judgment be reversed and the cause remanded to the court for a new trial, and for such other and further relief as is consistent with equity and good conscience."

Counsel for the plaintiff in error say in their brief:

"We will first take up the third assignment of error which is as follows: 'The court erred in refusing to permit the defendant to prove that the Corporation Commission of the state of Oklahoma has issued orders forbidding the drilling of any oil and gas wells except offset wells and in refusing to permit the defendant to introduce the orders in evidence and to prove that that was the cause in the delay in drilling the well'"

—to which offer the plaintiffs objected, and the court, in sustaining the objection of the plaintiff, stated:

"I don't think the question whether a well was drilled or not is material in this case, inasmuch as I am just going to submit to the jury the question of whether or not the defendant requested the plaintiff to allow the tools to remain there, and if so, how much they were entitled to for the rental of the tools while they remained there idle. They can only recover for the tools while they remained there at the request of the defendant."

The evidence of the plaintiffs tended strongly to sustain the allegations of their petition. The fact that they drilled the first well described in their petition was admitted by the defendant. The fact that the plaintiffs moved their tools to the second location and at the request of the defendant was clearly shown by the evidence. The fact that the tools remained at the second location for the length of time alleged by the plaintiffs and were idle during that time was clearly proven by the plaintiffs and not disputed by the defendant. The fact that the tools remained at the second location at the instance and request of the defendant was testified to by the plaintiffs and disputed by the testimony of one witness, Mr. Knappenberger, for the defendant.

The evidence was clear that the rental value of tools when in use was from $20 to $25 per day of 12 hours, or twice that for a day of 24 hours, and when in operation it required two men at a cost of $12 or $13 per day of 12 hours, or twice that for a day of 24 hours.

Revised Laws 1910, sec. 2852, provides:

"For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin."

The Territorial Supreme Court in the case of W. P. Callahan & Co. v. Chickasha Cotton Oil Co., 17 Okla. 544, 87 Pac. 331, construing the statute, supra, said:

"This statute is only declaratory of the common-law rule of measuring damages and in no way changes or enlarges the damages which the defendant might recoup under the common law for the delay in furnishing the machinery and performing its contract by the defendant or the rule by which such damages are to be ascertained and measured."

And, while it reversed that case because evidence on the measure of damages was improperly admitted, after citing the case of Livermore F. & M. Co. v. Union F. & C. Co. (Tenn.) 58 S. W. 270, the court continues:

"The court places its judgment upon the fact that the rental value of the compress was proven, and we think there is no ques-

tion but that if the rental value of property can be fairly ascertained, that is a correct measurement of damages for its enforced idleness."

The case of Kansas City, M. & O. R. Co. v. Fugatt, 47 Okla. 727, 150 Pac. 669, was one where an action was brought by the plaintiff, a traveling salesman, to recover damages for loss of time and expenses incurred on account of the alleged negligence of the railway company in delivering him, at Enid, two large sample trunks. This court, in affirming a judgment in favor of the plaintiff in an opinion by Sharp, J., said:

"While in the abstract we realize the great difficulty often encountered in the matter of determining the correct rule for measuring damages, in the present case, keeping in sight the statute, (section 2852, Rev. Laws 1910), no such difficulty appears; and, in our judgment, plaintiff has clearly brought himself within the statute. * * * The damages which he sustained were those, according to the testimony, which in the ordinary course of things would be likely to result. This is the precise language of the statute, and its purpose is to fix a rule whereby the damages may be estimated with a reasonable degree of accuracy"

—citing, in support thereof, Webb v. Atlantic Coast Line R. Co., 76 S. C. 193, 56 S. E. 954, 9 L. R. A. (N. S.) 1218, wherein it was said:

"That knowledge of the trunk being a salesman's trunk of samples taken with him on a business trip, included knowledge that delay in its delivery would result in interruption of his business and loss of his time and custom." Ft. Smith & W. R. Co. v. Williams, 30 Okla. 726, 121 Pac. 275; Cloe v. Rogers, 31 Okla. 255, 121 Pac. 201; Southerland on Damages, vol. 1, p. 79; Sedgwick on Damages, vol. 1, sec. 149; Letcher v. Maloney et al., 70 Oklahoma, 172 Pac. 972.

The trial court seems to have proceed upon the theory that the plaintiffs were or were not entitled to compensation as the jury might determine for the detriment caused by the defendant in the delay in keeping the tools upon the defendant's lease, and even if it were true that the Corporation Commission had ordered that no further wells be drilled except offset wells, that would not justify the defendant in retaining the tools of the plaintiff and requiring the plaintiffs to be in readiness to drill a well on the defendant's lease, and therefore it was immaterial as to whether or not the Corporation Commission had made such an order, and in this we think the trial court was correct.

Counsel for the defendant say in their brief.

"We will discuss assignments of error Nos. 1, 2, 4, 5, 6, 7, 8 and 9 together. The gist of all these assignments is that the court permitted the introduction of evidence and submitted to the jury the question of the rental value of the tools or drilling outfit during the time they were on the Collins farm, notwithstanding the fact that they agreed to and acquiesced in the delay and never notified or suggested to the Terrell Company until after the whole time had expired that they desired or expected to be paid the rental value of the tools."

At the close of the plaintiffs' evidence the defendant demurred to the same, which demurrer was overruled by the court and its action excepted to by the defendant. At the close of the evidence the defendant requested the following instruction:

"You are instructed that when an employer employs a contractor to do certain work or construction for such employer and then the employer delays or requests the contractor to delay the performance of the work, the contractor may not acquiesce in the suspension without notice to the employer that he will claim compensation therefor, and then either upon the resumption of the work, or upon its abandonment by the parties, claim damages for such suspension which may have occurred with his acquiescence."

—which request was refused by the court and its action excepted to by the defendant; but upon the issues presented by the requested instruction the court gave the following instruction:

"You are instructed that when an employer employs a contractor to do certain work or construction for such employer and then the employer delays or requests the contractor to delay the performance of the work, the contractor may not acquiesce in the suspension without notice to the employer that he will claim compensation therefor or unless the employer knew that the contractor expected compensation therefor, and then claim compensation for such time acquiesced in, but if the employer delays or requests a delay or suspension of the work and the contractor notifies the employer that he expects compensation for such delay or if the employer knows that the contractor expects compensation for such delay and thereafter the employer without the knowledge or consent of the contractor abandons the work or does not give to the contractor the right to perform said work, the contractor may recover for such delay or suspension."

The court also gave as a part of its charge to the jury the following instruction:

"You are instructed that if you believe from the evidence that the defendant employed the plaintiffs to drill an oil or gas well, then the implication, in the absence of a specific agreement as to when the well should be commenced, would be that it should be commenced in a reasonable time and if, before the commencement of the well, the

defendant requested plaintiffs to delay the commencement thereof and plaintiffs consented to such delay without making it known to the defendant that they would ask compensation therefor or without the defendant knowing that the plaintiffs would look to it for compensation therefor, then the plaintiffs cannot recover damages or compensation for the use or non-use of their tools during any such delay to which they consented or in which they acquiesced without notice to the defendant that they expected compensation for such delay or wherein the defendant did not know that the plaintiffs would look to it for compensation for such delay."

The court also instructed the jury:

"If you find for the plaintiff you cannot exceed in your verdict the sum sued for."

The trial court treated the case as one alone for the recovery of the rental value of the string of tools of the plaintiffs remaining idle upon the premises and dependent upon whether they were placed there at the request of the defendant. This issue was made by the pleadings and evidence and was submitted to the jury by the trial court by the following instructions:

"You are instructed that if you believe from the preponderance of the evidence that the plaintiffs were directed by the defendant through its agent or agents to move the tools in controversy from the Root farm on to what is called the Collins farm for the purpose of drilling the well or wells, and the plaintiffs complied with said request, and after having moved the tools on said premises the defendant requested plaintiffs to keep the tools on said premises from time to time for the purpose of drilling a well or wells thereon, and the plaintiffs consented thereto with the understanding, express or implied, that the plaintiffs should be compensated therefor, and the defendant built a rig upon said premises to be used by the plaintiffs in drilling said well or wells, to which the plaintiffs moved tools, and thereafter moved said rig away and the plaintiffs were not permitted to drill said well or wells through no fault of theirs, and the plaintiffs were ready, able and willing to drill said well or wells at all times prior to the removal of the said rig and retained their tools at the request and direction of the defendant for that purpose, then your verdict should be for the plaintiffs for the reasonable rental value of the tools as idle tools for such period as you find from the evidence they were under such conditions as above set forth. The plaintiffs, if they recover, can only recover for the reasonable rental value of such idle tools during such period. You will be permitted to award any damages that the tools might have earned had they been used during said period."

We think that this instruction, together with the foregoing instruction, fairly states the law applicable to the case as made by the pleadings and the evidence, and put before the jury the question as to whether or not the tools were moved to the Collins farm and remained there at the request of the defendant, and as to whether or not under such circumstances as would render the defendant liable to the plaintiffs for the rental value of the tools during the time they remained idle upon the premises, and limited the amount of the plaintiffs' recovery to such rental value, and as we have seen, in view of the authorities cited, this was a proper element of the plaintiffs' damages, and should the jury so find from a preponderance of the evidence, as was advised by the court, it would be their duty to render a verdict in favor of plaintiffs, which the jury did, and the same was approved by the trial court.

We have carefully examined the entire record, and find that the evidence was conflicting and that instructions of the court contained a fair statement of the principles of law involved and that there is competent evidence reasonably tending to support the verdict of the jury, and this court has frequently held that under such circumstances the judgment rendered should not be disturbed by this court upon appeal. Dickinson v. Perry, 75 Okla. 25, 181 Pac. 504; McCoy v. Wosika, 75 Okla. 3, 180 Pac. 967; St. Paul F. & M. Ins. Co. v. Robison, 72 Oklahoma, 180 Pac. 702.

There being no reversible error found in the record, the judgment of the trial court is therefore affirmed.

OWEN, C. J., and PITCHFORD, Mc-NEILL, HIGGINS, and BAILEY, JJ., concur.